*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Matthew P. Hoffmann, Corporal
United States Marine Corps, Appellant

### No. 15-0361
Crim. App. No. 201400067

Argued October 20, 2015—Decided February 18, 2016

Military Judge: Nicole K. Hudspeth

For Appellant: *C. Ed Massey,* Esq. (argued); *Lieutenant Ryan Aikin,* JAGC, USN*,* and *Lieutenant Jessica L. Ford,* JAGC, USN.

For Appellee: *Captain Cory A. Carver*, USMC (argued); *Colonel Mark K. Jamison*, USMC, *Major Suzanne M. Dempsey*, USMC, and *Brian K. Keller,* Esq. (on brief).

Amicus Curiae for Appellant: *Loren K. Peck* (law student) (argued); *Timothy C. MacDonnell,* Esq. (supervising attorney) (on brief)—Washington and Lee School of Law.

Judge STUCKY delivered the opinion of the Court, in which Chief Judge ERDMANN, Judges RYAN and OHLSON, and Senior Judge LAMBERTH joined.

————————

Judge STUCKY delivered the opinion of the Court.[1]

Government investigators collected electronic media during a consent search of Appellant's barracks room. During the collection process, Appellant withdrew his consent. Nevertheless, the investigators seized the electronic media. The following day Appellant formally revoked his consent in writing and demanded the return of all property in the Government's possession without it being searched. We granted review to determine whether the military judge erred in refusing to suppress the fruit of a search of the seized media

---

[1] Senior Judge Royce C. Lamberth, United States District Court for the District of Columbia, sat by designation, pursuant to Article 142(f), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 942(f) (2012).

made pursuant to a commander's authorization issued four months after Appellant revoked his consent to search and seize.[2] We hold that the military judge abused her discretion in denying the motion to suppress.

## I. Procedural History

A general court-martial of officer and enlisted members convicted Appellant, contrary to his pleas, of attempted sodomy of a child, indecent liberties with a child, child enticement, and possession of child pornography. Articles 80, 120, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 920, 934 (2012). The convening authority approved the adjudged sentence: a dishonorable discharge, confinement for seven years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The United States Navy-Marine Corps Court of Criminal Appeals (CCA) affirmed. *United States v. Hoffmann*, 74 M.J. 542, 555 (N-M. Ct. Crim. App. 2014).

## II. Background

Appellant was taken into custody on board Camp Lejeune, North Carolina, on suspicion of committing indecent liberties with children. Investigators alleged that he had driven around Camp Lejeune and solicited young boys for sex. Appellant was advised of his right to counsel and his right to remain silent and invoked both. Nevertheless, Appellant consented to the search of his barracks room, and specifically "all items used for storage that are locked and unlocked." He further consented to the removal and retention of "any property or papers found during the search which are desired for investigative purposes."

Approximately twenty-five minutes into the search, after Appellant noticed the investigators collecting various digital media, Appellant withdrew his consent. Staff Sergeant Anthony Rivera and other investigators terminated the search

---

[2] We heard oral argument in this case at Washington and Lee University School of Law, Lexington, Virginia, as part of the Court's "Project Outreach." *See United States v. Mahoney*, 58 M.J. 346, 347 n.1 (C.A.A.F. 2003). This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

but seized the items they had previously collected. In an undated letter provided to the investigators the day after the search, Appellant formally revoked his consent to search or seize any of his property and demanded the return of the property previously seized. The items were not returned.

Four months later, Appellant's battalion commander issued investigators a command authorization to search the digital media that had previously been seized for evidence of child pornography. The authorization was based on a lengthy discussion the commander had with Special Agent Dana Shutt, and an affidavit, asserting that she knew through her "training and experience that there is an intuitive relationship between acts such as enticement or child molestation and the possession of child pornography." In the affidavit, the investigator noted that the request for search authorization related to items that had been seized as a result of Appellant's consent. Nowhere did it inform the commander that Appellant had revoked his consent. A forensic analysis of the digital media seized revealed child pornography.

At trial, Appellant moved to suppress the fruit of the search of the electronic media. The military judge held a suppression hearing. While the commander who issued the search authorization was testifying on direct telephonically, it came to light that he was using documents to assist him. When the defense counsel sought to obtain copies of those materials in order to cross-examine the search authority, the military judge stated that the Government had met its burden and that the commander's testimony was "overkill." She refused to continue the motions hearing to allow the defense counsel to obtain the documents.

The military judge denied the motion to suppress. She found that the seizure was lawful because Appellant withdrew his consent for search and seizure after investigators had seized the electronic media. The military judge opined that, even if Appellant had withdrawn consent before the seizure, the doctrine of inevitable discovery applied and that probable cause existed to seize and search the computer equipment. The military judge gave substantial deference to the commander as an impartial magistrate and concluded

that the Government had established that the evidence was not obtained as a result of an unlawful search or seizure.

On appeal, the CCA declined to rule on the issue of whether Appellant revoked his consent before or after the seizure of the media. *Hoffmann*, 74 M.J. at 546. Instead, the CCA focused on the inevitable discovery doctrine, concluding that had Appellant declined to consent to the search and seizure of his room, the investigators would have frozen the scene and sought a search authorization, providing sufficient evidence to the search authority to establish probable cause. *Id.* at 547–48. We granted review.

### III. Discussion

The Fourth Amendment protects the people against unreasonable searches and seizures and provides that warrants shall not be issued absent probable cause. U.S. Const. amend. IV. The military has implemented the Fourth Amendment through Military Rules of Evidence (M.R.E.) 311–17.

Searches conducted after obtaining a warrant or authorization based on probable cause are presumptively reasonable whereas warrantless searches are "presumptively unreasonable unless they fall within 'a few specifically established and well-delineated exceptions.'" *United States v. Wicks*, 73 M.J. 93, 99 (C.A.A.F. 2014) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)), *reconsideration denied*, 73 M.J. 264 (C.A.A.F. 2014). A search conducted with the consent of the accused is "one of the specifically established exceptions to the requirements of both a warrant and probable cause." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *see* M.R.E. 314(e). "Property … may be seized with consent consistent with the requirements applicable to consensual searches under Mil. R. Evid. 314." M.R.E. 316(c)(3). The government bears the burden of showing the applicability of the exception. *Wicks*, 73 M.J. at 99.

We review a military judge's ruling on a motion to suppress evidence for an abuse of discretion, viewing the evidence in the light most favorable to the party prevailing below. *United States v. Keefauver*, 74 M.J. 230, 233 (C.A.A.F. 2015). That means we review the military judge's findings of fact for clear error but her conclusions of law de novo. *Id.*

A. The Seizure

The scope of a consent search or seizure is limited to the authority granted in the consent and may be withdrawn at any time. M.R.E. 314(e)(3), 316(c)(3); *see United States v. Dease*, 71 M.J. 116, 120 (C.A.A.F. 2012). The military judge concluded that Appellant validly withdrew his consent but only after "the investigators had already seized the digital media, as there had already been a meaningful interference with the accused's possessory interest in that property."

"A 'seizure' of property occurs when there is some *meaningful* interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (emphasis added). By employing the term "meaningful interference," the Supreme Court must have "contemplated excluding *inconsequential interference* with an individual's possessory interests." *United States v. Va Lerie*, 424 F.3d 694, 706 (8th Cir. 2005) (en banc). It must be more than a technical trespass. *Id.* at 702 (bag moved from overhead compartment to seat so that drug dog could sniff for drugs was not "meaningful interference"); *United States v. Gant*, 112 F.3d 239, 242 (6th Cir. 1997) (same); *United States v. Lovell*, 849 F.2d 910 (5th Cir. 1988) (agents removed checked luggage from baggage conveyor belt, compressed sides of luggage several times, smelled marijuana, then subjected luggage to a dog sniff was not seizure). A seizure requires law enforcement agents to exercise a fair degree of dominion and control over the property. *See Jacobsen*, 466 U.S. at 120 (field testing contents of a package for illegal substances was "meaningful interference"); *Hudson v. Palmer*, 468 U.S. 517, 544 (1984) (completely destroying the property was "meaningful control").

Appellant withdrew his consent while the media were still sitting in his room. While the agents may have moved the media to a central location in the room, they did not meaningfully interfere with it until they removed it. As the seizure of the media occurred after Appellant had withdrawn his consent, the seizure violated the Fourth Amendment.

B. Inevitable Discovery and the Search Authorization

Normally, the fruits of a search or seizure that violates the Fourth Amendment are inadmissible. *Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961); *United States v. Conklin*, 63 M.J. 333, 334 (C.A.A.F. 2006); M.R.E. 311(a). Notwithstanding the invalidity of the seizure of the digital media, the inevitable discovery doctrine provides an exception to the exclusionary rule, "allowing admission of evidence that, although obtained improperly, would have been obtained by another lawful means." *United States v. Wallace*, 66 M.J. 5, 10 (C.A.A.F. 2008); *see Nix v. Williams*, 467 U.S. 431, 443–44 (1984); M.R.E. 311(c)(2).

To take advantage of this doctrine, the prosecution must establish, by a preponderance of the evidence, "'that *when the illegality occurred*, the government agents possessed, or were actively pursuing, evidence or leads that would have inevitably led to the discovery of the evidence and that the evidence would inevitably have been discovered in a lawful manner had not the illegality occurred.'" *Dease*, 71 M.J. at 122 (quoting *United States v. Kozak*, 12 M.J. 389, 394 (C.M.A. 1982)) (emphasis added). The military judge made no findings as to the state of probable cause at the time Appellant withdrew consent.

There is no evidence that, at the time of the seizure, the government agents possessed or were actively pursuing leads that would have inevitably led to discovery of the child pornography images by lawful means. The assumption that the investigators could have lawfully frozen the scene at Appellant's barracks room and pursued a command authorization based on probable cause is unjustified. Freezing the scene to procure a command authorization requires probable cause or exigent circumstances. *Segura v. United States*, 468 U.S. 796, 810 (1984) (plurality opinion). The Government has not argued and the record does not contain any exigent circumstances justifying freezing the scene. Moreover, as discussed below, the Government failed to establish that the investigators had probable cause to believe that child pornography or evidence of the alleged offenses would be found on Appellant's computer equipment.

Several months after seizing the digital media, investigators sought and obtained command authorization to search the digital media for child pornography. If supported by probable cause known to the investigators at the time of the seizure and otherwise valid, the search authorization could overcome the fact that the digital media on which child pornography was found was seized illegally.

An impartial commander "who has control over the place where the property … to be searched is situated" is authorized to issue a search authorization, M.R.E. 315(d)(1), "based upon probable cause." M.R.E. 315(f)(1). Probable cause to search exists when, based on written and oral statements and "information as may be known by the authorizing official that would not preclude the official from acting in an impartial fashion," M.R.E. 315(f)(2)(c), there "is a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched." M.R.E. 315(f)(2). A valid search authorization requires the impartial authorizing official to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a *fair probability* that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238 (emphasis added); *see United States v. Cowgill*, 68 M.J. 388, 393 (C.A.A.F. 2010); *see also Ornelas v. United States*, 517 U.S. 690, 696 (1996) (probable cause to search "exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in a particular place).

"'In dealing with probable cause, … as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Gates*, 462 U.S. at 231 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)); *see Cowgill*, 68 M.J. at 393. The authorizing official is free to draw "reasonable inferences" from the material supplied by those applying for the authority to search. *Gates*, 462 U.S. at 240.

7

We do not review a probable cause determination de novo. Instead, our duty is to make sure that the authorizing official had a "substantial basis" for concluding that probable cause existed. *United States v. Huntzinger*, 69 M.J. 1, 7 (C.A.A.F. 2010) (quoting *Gates*, 462 U.S. at 238–39). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239; *see United States v. Gallo*, 55 M.J. 418, 424 (C.A.A.F. 2001).

The affidavit accompanying the request for a search authorization detailed the affiant investigator's credentials and experience in forensic digital media collection and conducting investigations into child exploitation via the Internet. The affidavit detailed facts and circumstances leading to Appellant's apprehension: one of three boys who had complained about being solicited on the street for sex had identified Appellant's vehicle and Appellant as the perpetrator; and another victim had described a truck similar to Appellant's and picked Appellant out of a photo lineup.[3]

The investigator testified that she had explained to the search authority that in a majority of cases of child pornography there was evidence of solicitation. The search authority was unable to confirm this, and the military judge made no finding that the investigator had.[4] Nor is it clear from the record that the investigator advised the search authority: (1) that a GPS tracking device had been placed on Appellant's vehicle but had not produced any information of evidentiary value; (2) that she had not determined whether Appellant had Internet access in his room; (3) that the Internet Crimes Against Children Taskforce had no infor-

---

[3] It appears the affiant failed to advise the search authority that this victim identified Appellant with only fifty percent certainty. The affiant also advised the search authority orally that, in a "photographic lineup," a third victim had been unable to identify Appellant as the perpetrator. She failed to inform the search authority that, in fact, this victim had identified someone other than Appellant.

[4] Regardless, the relevant statistic would have related whether there was any evidence that persons who solicited minors for sex were likely to have child pornography, not vice versa.

mation on Appellant's screen name; (4) a criminal back-ground check on Appellant was negative; and (5) no relevant information was revealed from canvassing Appellant's acquaintances.

The investigator then concluded:

> As this affiant knows through training and experience that there is an intuitive relationship between acts such as enticement or child molestation and the possession of child pornography, this Affiant believes there is probable cause to believe evidence of the sexual exploitation of children by means of the receipt and possession of child pornography … is present within [the seized digital media].

The military judge's inevitable discovery ruling was based on the following: (1) testimony of Staff Sergeant Anthony Rivera, one of the investigators, that, had Appellant not consented to the seizure, he would have sought a search authorization;[5] (2) Special Agent Dana Shutt's affidavit in support of a search authorization, submitted four months after the seizure, explaining that there is "'an intuitive relationship between acts such as enticement or child molestation and the possession of child pornography'"; (3) the search authority's testimony concerning his discussion of the evidence and his decision to grant the search authorization; (4) *United States v. Colbert*, 605 F.3d 573, 578 (8th Cir. 2010); and (5) the substantial deference to which a search authority is entitled in determining probable cause.

The CCA, noting that this was a case of first impression in the military, surveyed case law from the federal circuit courts of appeals. *Hoffmann,* 74 M.J. at 549–52. It concluded that, where the affiant expressly alleges the nexus between

---

[5] He also testified that he thought there would be evidence on the computer equipment because of his past training and experience and reported that training had taught him that "the person that has done some sort of sexual act has either looked it up on a computer or they usually maintain something within media equipment, have videos or things [of] that sort." He estimated that such evidence would be found on an accused's computer seventy to eighty percent of the time. The military judge did not rely on this testimony in her ruling on inevitable discovery.

child molestation and child pornography, the issuing authority is able to weigh the credibility of information before deciding whether to authorize the search. *Id.* at 551–52. "View[ing] the facts in a common sense manner," the CCA determined that "an individual accused of deliberately seeking out boys walking home alone and then engaging in brazen, repeated attempts to entice those boys into sexual activity is likely to possess child pornography, either as a means to gratify their desires or as an aid in those activities." *Id.* at 551.

Appellant argues that none of the facts and circumstances provided to and relied upon by the search authority established a nexus between the attempt to entice children on the street to commit sex acts and the possession of child pornography on his digital media. We agree.

No evidence connected Appellant's acts to his possession of child pornography. In place of the missing evidence, both the military judge and the CCA found persuasive language from an opinion by the United States Court of Appeals for the Eighth Circuit that matches the language Special Agent Shutt employed in her affidavit: "'There is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography.'" *Hoffmann*, 74 M.J. at 551 (quoting *Colbert*, 605 F.3d at 578). The problem with relying on *Colbert* is that the facts were considerably different in that case. Colbert conversed for forty minutes with a five-year-old girl he met in the park, telling her that he had movies and videos in his apartment that she would like to see. During a consent search of his vehicle, police found handcuffs and other police-type gear. The Eighth Circuit held that, although a close case, the affidavit established probable cause by showing a direct link between the alleged enticement of a child and movies in his apartment, the place searched pursuant to a search warrant. *Colbert,* 605 F.3d at 578. That link is not present in Appellant's case.

Under the circumstances of Appellant's case, the facts before the search authority were simply not sufficient to provide a substantial basis for concluding that there was probable cause to believe Appellant possessed child pornography. *See Dougherty v. City of Covina*, 654 F.3d 892, 898–99 (9th Cir. 2011) (concluding that evidence of child molesta-

tion did not establish probable cause to search for child pornography). As Justice Sotomayor observed while serving on the Second Circuit:

> It is an inferential fallacy of ancient standing to conclude that, because members of group A (those who collect child pornography) are likely to be members of group B (those attracted to children), then group B is entirely, or even largely composed of, members of group A. Although offenses relating to child pornography and sexual abuse of minors both involve the exploitation of children, that does not compel, or even suggest, the correlation drawn by the district court.

*United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008) (footnotes omitted) (citations omitted) (internal quotation marks omitted). Without probable cause, the inevitable discovery doctrine fails.

## C. The Good Faith Exception

The exclusionary rule is "'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *United States v. Leon*, 468 U.S. 897, 906 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). The Supreme Court has recognized that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Id.* at 918–19. This has become known as the good-faith exception to the exclusionary rule.

The President, exercising his authority under Article 36, UCMJ, 10 U.S.C. § 836 (2012), promulgated a military good-faith exception rule:

> Evidence that was obtained as a result of an unlawful search or seizure may be used if:
>
> (A) The search or seizure resulted from an authorization to search, seize or apprehend issued by an individual competent to issue the authorization under Mil. R. Evid. 315(d) or from a search warrant or arrest warrant issued by competent civilian authority;

(B) The individual issuing the authorization or warrant had a substantial basis for determining the existence of probable cause; and

(C) The officials seeking and executing the authorization or warrant reasonably and with good faith relied on the issuance of the authorization or warrant. Good faith shall be determined on an objective standard.

M.R.E. 311(b)(3).[6]

The military good-faith exception need not long detain us in this case. As noted above in Part III.B., the individual issuing the authorization did not have a substantial basis for determining the existence of probable cause, a requirement for application of the good-faith exception. Thus, the military judge abused her discretion in admitting the fruits of the search of Appellant's digital media.

### D. Prejudice

Although the military judge abused her discretion by admitting the child pornography evidence, we may not set aside the finding of the court-martial "unless the error materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2012). In this case, the error was of constitutional dimension.

"A constitutional error is harmless when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Mitchell v. Esparza*, 540 U.S. 12, 17–18 (2003) (internal quotation marks omitted); *see United States v. Mott*, 72 M.J. 319, 332 (C.A.A.F. 2013).

> To say that an error did not "contribute" to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous....
>
> To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.

---

[6] Now found at M.R.E. 311(c)(3). Exec. Order No. 13,643, 78 Fed. Reg. 29,559, 29,567 (May 21, 2013).

*Yates v. Evatt*, 500 U.S. 391, 403 (1991), *overruled on other grounds by Estelle v. McGuire*, 502 U.S. 62, 72 n.4 (1991); *accord United States v. Paige*, 67 M.J. 442, 451 (C.A.A.F. 2009). As the only evidence supporting Appellant's conviction for the wrongful possession of child pornography was the result of an unlawful seizure and an unlawful search, it clearly contributed to the court member's findings.

The military judge instructed the court members that each offense must stand on its own. They were to keep the evidence of each offense separate, unless they determined that it was relevant to prove more than one offense. During his closing and rebuttal arguments on findings, the trial counsel argued that all of the offenses, including the wrongful possession of child pornography, were manifestations of Appellant's character: that of a predator, sexually attracted to young boys. But the strongest evidence of this purported character trait was the child pornography. Under the circumstances of this case, we conclude that the Government failed to establish that the admission of those images was unimportant in relation to the other evidence the panel heard on the remaining offenses.

## IV. Judgment

The judgment of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The findings and sentence are set aside. Specification 2 of Charge III is dismissed with prejudice. A rehearing is authorized.