# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39232**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Zhermie R. TOLEDO**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 16 October 2018

———————————

*Military Judge:* James R. Dorman.

*Approved sentence:* Bad-conduct discharge, confinement for 2 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 18 January 2017 by GCM convened at Minot Air Force Base, North Dakota.

*For Appellant:* Major Allen S. Abrams, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Michael T. Bunnell, USAF; Mary Ellen Payne, Esquire.

Before HARDING, HUYGEN, and POSCH, *Appellate Military Judges*.

Senior Judge HARDING delivered the opinion of the court, in which Judges HUYGEN and POSCH joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

HARDING, Senior Judge:

Contrary to Appellant's pleas, a general court-martial consisting of a military judge convicted Appellant of attempted enticement of a person to engage

in sexual acts with him in exchange for money, attempted receipt of child pornography, attempted production of child pornography, and procuring persons to engage in sexual acts with him in exchange for money in violation of Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 934.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

On appeal, Appellant raises the following assignments of error: (1) whether the military judge erred when he found probable cause existed to search Appellant's camera; (2) even if there was probable cause to search Appellant's camera, whether the military judge erred when he found the search of the memory card within the camera was within the scope of the search authorized by the magistrate's warrant;[2] and (3) whether the evidence supporting Appellant's convictions is legally and factually sufficient where the prosecution was required to prove a person was under the age of 18 years and where the prosecution introduced no evidence to show Appellant's conduct was of a nature to bring discredit upon the armed forces or prejudicial to good order and discipline.[3] We hold that the military judge erred in finding a substantial basis for probable cause to search the memory card of Appellant's camera and that neither the good faith exception nor the inevitable discovery exception to the warrant requirement applies. Thus, we set aside Charge II and its Specification (patronizing prostitutes) and the sentence. Finding no other prejudicial error, we affirm the remaining findings.

## I. BACKGROUND

Appellant answered an online advertisement placed on a website used for advertising prostitution services by Officer KC of the Minot (North Dakota)

---

[1] The military judge acquitted Appellant of two other specifications of attempted conspiracy to perform a sexual act on a child who had not attained the age of 12 years and a lewd act upon a person he believed had not attained the age of 16 years in violation of Article 80, UCMJ.

[2] Given our resolution of the first issue, we do not address this assignment of error.

[3] Appellant raises these issues of legal and factual sufficiency pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Given our disposition of Charge II and its Specification we need not reach these issues for that conviction. With respect to Specifications 1, 2, and 3 of Charge I, we have considered and reject these claims, which neither require additional analysis nor warrant relief. *See United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

Police Department as part of an undercover law enforcement operation. The advertisement posted under the pseudonym "Riley" was captioned, "Petite young browneyed [sic] girl…Teach me Daddy! –18" and included photographs of a young woman. Appellant's text-message response to the advertisement consisted of a question—whether "Riley" was really 18—and Appellant stated his preference as to age as "younger would be better" or words to that effect. Officer KC, posing as "Riley," replied that she was 16 years-old. Appellant immediately requested pictures and replied that "Riley's" age was "great." Appellant then specifically asked for pictures consisting of "Riley's" 16 yo [sic] boobs and kitty." As the text messaging continued, Appellant identified himself as "Robin" and described sex acts he was willing to pay "Riley" $250.00–$400.00 per hour to perform on or with him. Appellant also texted that he desired to videotape these sex acts with "Riley."

After review of the texts, Minot Police Department officers searched social media websites for the phone number associated with Appellant's texts to "Riley" and found a social media page for "Robin Toledo." An officer recognized "Robin Toledo" as an Air Force member she knew as "Zhermie." In response to a request for information, the Air Force Office of Special Investigations detachment at Minot Air Force Base, North Dakota, confirmed that a Technical Sergeant Zhermie Robin Toledo was assigned to Minot Air Force Base and that he had a phone number that matched the one associated with the texts to "Riley."

Appellant and "Riley" continued to correspond, and only a few days after Appellant had initially responded to the online advertisement, made arrangements to meet in a hotel parking lot. Appellant messaged "Riley" that, before going to a room with her, he wanted to "do a law enforcement check" in the parking lot and that he would be driving a black truck. Officer TJ, who portrayed "Riley" for the meeting with Appellant, observed a black truck enter the parking lot of the agreed-upon hotel. She recognized the person driving the truck as the person in the photographs posted on the social media page associated with the phone number Appellant used to send texts to "Riley." Officer TJ approached Appellant's truck and said, "Hi." Appellant responded, "Hi Riley, I'm Robin." Almost immediately, other officers who had been observing nearby apprehended Appellant by removing him from the truck, handcuffing him, and laying him on the ground. In the course of patting down Appellant, officers detected and examined bulges in Appellant's pockets. The officers removed $300.00 in cash and a video-camera from Appellant's pockets. Meanwhile, another officer secured Appellant's wallet and cell phone from his truck. Appellant was arrested for the offense of luring a minor by computer or other electronic means.[4]

---

[4] N.D. Cent. Code § 12.1–20–05.1 (2007).

Nearly a week after Appellant's arrest, Captain DS of the Minot Police Department requested a search warrant for the digital contents of Appellant's cellphone and camera. No search of either took place prior to the search warrant being issued. At a hearing for the Defense motion to suppress the evidence resulting from the search of Appellant's cell phone and camera, the trial counsel asked Captain DS about seeking a search warrant for the camera.

> Trial Counsel (TC): Why would you need a search warrant?
>
> Captain DS (DS): To make sure that we're not violating the constitutional rights of the defendant.
>
> TC: And why in this case did you think that those items needed to be searched.
>
> DS: He had remarked on the text conversations that he wanted to video record their [Appellant and "Riley's"] sexual activity.
>
> TC: Did you believe that there might be evidence of a crime on the camera that was taken off his person?
>
> DS: Yes.
>
> TC: What were you basing this believe [sic] off of?
>
> DS: Well, for one thing his text said that he wanted to videotape it and it's fairly common for people to be involved in this kind of activity to have multiple encounters and other types of media.
>
> TC: Would you say that your experience as a police officer and as the commander of investigations has taught you that that's typical?
>
> DS: Yes.
>
> TC: Did you think that it was reasonable under these circumstances to have the camera searched.
>
> DS: Yes.
>
> TC: And when you obtained the search warrant, did you feel that you were legally authorized at the point to go ahead and conduct, or have those searches conducted?
>
> DS: Yes.

In Captain DS's affidavit to the search authority, Captain DS recited pertinent parts of Appellant's texts with "Riley" and the details of Appellant's apprehension and stated that he believed "the cell phone and the camera may contain evidence of the instant offense"—luring a minor by computer or other electronic means. Captain DS further stated that he believed "the camera may

contain evidence of child pornography or other sexual offenses based upon [Appellant's] text message that he wanted to videotape the sexual activity with ["Riley"]."

A North Dakota district court judge authorized the requested search. The search warrant by its terms authorized a search and seizure of "the premises known as: Samsung Verizon cell phone" and "Sony cyber-shot camera" for "evidence of identification of the owner, text messages, call history, photos, child pornography."[5] The search warrant also specifically authorized a forensic examination of the contents of Appellant's cell phone and "any external multi-media storage devices" used with the phone. This particularized provision regarding multi-media storage devices was not repeated for the camera. The search warrant stated as a basis for probable cause that Captain DS had reason to believe that "on the premises known as: Samsung Verizon cell phone" and "Sony cyber-shot camera" there was property being concealed; namely, evidence of identification of ownership, text messages, call history, photos, and child pornography.

After receiving search authorization, but before turning over Appellant's cell phone and camera memory card to Detective CH for forensic analysis, Captain DS viewed the content of the memory card of the camera. Captain DS did not find any evidence in the camera memory card of the "instant offense" of luring a minor or any evidence of child pornography. Captain DS did, however, find six videos of Appellant engaged in sex acts with two different adult women, one of whom Captain DS recognized as a suspected prostitute. Captain DS did not examine the cell phone.

Detective CH used software to extract data from Appellant's cell phone and prepared reports of Appellant's text messaging to other cell phones. The reports generated from the extracted data were organized by the cell phone numbers to which Appellant's cell phone sent text messages. These reports were produced in a searchable portable document format (PDF). Only one of these PDF extraction reports matched the text messaging between Appellant and "Riley," and was readily identifiable by "Riley's" cell phone number and the timeframe of the messaging between Appellant and "Riley"—both data points known to the Minot Police Department. This extraction report, consisting of five pages, was admitted as Prosecution Exhibit 3. The other reports of text messages extracted from Appellant's phone, which matched cell phone num-

---

[5] Nowhere in Captain DS's affidavit does he indicate that the search authorization was sought in order to search for and seize "evidence of identification of the owner."

bers other than "Riley's," included messages that detailed solicitations, negotiations, and agreements between Appellant and people Appellant believed to be prostitutes.

During closing argument, the trial counsel referenced metadata regarding the dates and times of certain text messaging from Appellant's cell phone and correlated that data to the date and time stamps of the videos that were stored on the camera memory card depicting Appellant engaged in sex acts with suspected prostitutes. Having established this link between the text messages and videos, the trial counsel argued to the military judge that Appellant had on divers occasions patronized prostitutes as alleged in Charge II and its Specification.

## II. DISCUSSION

### A. Search of Appellant's Camera

Appellant asserts that the Government did not have a substantial basis for probable cause to search the memory card of Appellant's camera and that neither the good faith exception nor the inevitable discovery exception to the warrant requirement applies, and therefore the military judge erred in denying the motion to suppress the videos from Appellant's camera memory card. We agree.

#### 1. Substantial Basis for Probable Cause

The Fourth Amendment provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. CONST. amend. IV.

Searches conducted pursuant to either a warrant or an authorization based on probable cause are presumed reasonable. *United States v. Hoffmann*, 75 M.J. 120, 123–24 (C.A.A.F. 2016) (quoting *United States v. Wicks*, 73 M.J. 93, 99 (C.A.A.F. 2014)).

We review a military judge's denial of a motion to suppress for an abuse of discretion. *Id.* at 124 (citing *United States v. Keefauver*, 74 M.J. 230, 233 (C.A.A.F. 2015)). Accordingly, when reviewing a magistrate's issuance of a search authorization, we "do not review [the military magistrate's] probable cause determination de novo." *Id.* at 125. Instead, we examine whether a "magistrate had a substantial basis for concluding that probable cause existed."

*United States v. Rogers*, 67 M.J. 162, 164–65 (C.A.A.F. 2009) (citing *United States v. Bethea*, 61 M.J. 184, 187 (C.A.A.F. 2005)). We give "great deference" to the magistrate's probable cause determination because of "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *United States v. Nieto,* 76 M.J. 101, 105 (C.A.A.F. 2017) (citation omitted). However, this deference is "not boundless," and a reviewing court may conclude that "the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances." *Id.* (citing *United States v. Leon*, 468 U.S. 897, 915 (1984)). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. 213, 239 (1983); *see United States v. Gallo*, 55 M.J. 418, 424 (C.A.A.F. 2001). However, if a military magistrate has "a substantial basis to find probable cause, a military judge [does] not abuse his discretion in denying a motion to suppress." *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007). A substantial basis exists "when, based on the totality of the circumstances, a commonsense judgment would lead to the conclusion that there is a fair probability that evidence of a crime will be found at the identified location." *Rogers*, 67 M.J. at 165 (citations omitted).

The Court of Appeals for the Armed Forces (CAAF) has addressed the issue of substantial basis for probable cause to search and seize evidence stored on electronic media in several cases.

In *Leedy,* the CAAF considered whether the description by the appellant's roommate of the file titles he had seen on the screen of the appellant's computer, coupled with an experienced investigator's knowledge of digital child pornography, provided a substantial basis for a probable cause determination. The investigator provided generalized information regarding child pornography file names and electronic storage. The CAAF concluded the information provided a substantial basis for the magistrate to conclude that there was probable cause to believe that child pornography would be found on the appellant's computer, even without a specific description of the file contents. 65 M.J. at 217.

In *Hoffmann*, the CAAF considered whether evidence of acts of child enticement and "an intuitive relationship between [such acts] and the possession of child pornography" could provide a substantial basis for concluding that there was probable cause to believe the appellant possessed child pornography on his electronic media. 75 M.J. at 127 (quoting *United States v. Hoffmann*, 74 M.J. 542, 555 (N.M. Ct. Crim. App. 2014)). Noting an absence of any evidence or direct link connecting the acts of child enticement to the possession of child pornography on the electronic media seized, the CAAF found *the facts* before the search authority insufficient to provide a substantial basis for concluding

that there was probable cause to believe the appellant possessed child pornography on his electronic media. *Id.* (citation omitted).

In *Nieto*, the appellant was observed and later admitted to using his cell phone to record others using a latrine without their consent. Based on this information and a law enforcement officer's generalized profile on how "persons who view and record sexual acts often times store and catalog their images and videos on larger storage devices such as a computer or hard drive," a military magistrate authorized the search of the appellant's laptop computer. 76 M.J. at 105. The search of the computer revealed nothing relevant to the investigation of the latrine recordings but did yield videos and pictures that constituted evidence of other crimes. In reviewing whether the authorizing magistrate had a substantial basis to find probable cause, the CAAF found that the affidavits supporting the search authorization did not reference any data transfers from the appellant's cell phone to his laptop computer, and thus the CAAF concluded the "generalized profile was not based on a *firm factual foundation.*" *Id.* at 107 (emphasis added). The CAAF then underscored the importance of facts to a substantial basis for probable cause.

> In order to identify a substantial basis for concluding that probable cause existed to believe that Appellant's laptop was linked to the crime, we conclude that—at a minimum—there needed to be some additional showing, such as the fact that Appellant actually downloaded images (illicit or otherwise) from his cell phone to his laptop, stored images on his laptop, or transmitted images from his laptop. And yet, there was no such showing in this case.

*Id.* (footnote omitted).

In the case now before us, the Government relies on the fact that Appellant "was actively seeking and trying to produce child pornography" with his stated intent to videotape the sex acts with "Riley" and the fact he brought a video-camera to their meet-up in order to demonstrate that the judge who authorized the search of Appellant's camera memory card relied on more than just a generalized law enforcement behavioral profile or "an intuitive relationship" between certain facts to find probable cause. The Government then cites *United States v. Colbert*, 605 F.3d 573 (8th Cir. 2010), as persuasive authority for the conclusion that the weight of Appellant's attempted production of child pornography tipped the balance in favor of a substantial basis for probable cause to search the camera memory card. However, as the CAAF pointed out in *Hoffman*, reliance on *Colbert* is problematic if the facts of the instant case are considerably different from the facts of *Colbert*.

> Colbert conversed for forty minutes with a five-year-old girl he met in the park, telling her that he had movies and videos in his apartment that she would like to see. During a consent search of his vehicle, police found handcuffs and other police-type gear. The Eighth Circuit held that, although a close case, the affidavit established probable cause by showing a direct link between the alleged enticement of a child and movies in his apartment, the place searched pursuant to a search warrant.

*Hoffmann*, 75 M.J. at 127. The CAAF concluded "[t]hat link [was] not present in [*Hoffman*]." *Id.*

We find the facts of Appellant's case are more closely aligned with those of *Hoffmann* and *Nieto* and distinguished from those of *Colbert* and *Leedy*. There was no direct factual link between Appellant's interactions with "Riley" and any data stored on Appellant's camera or camera memory card. As the military judge correctly determined in his written ruling that denied the motion to suppress,

> [A]t the time of the issuance of the warrant, there was little reason to believe that the camera contained evidence of the offense for which [Appellant] was apprehended – the enticement of "Riley." [Appellant] had not yet completed the meet-up with "Riley," and had not had an opportunity to film any interaction between himself and "Riley."

Notwithstanding this finding of fact, the military judge analyzed the information presented to the judge who authorized the search of Appellant's camera and found a substantial basis for probable cause:

> At the time the search warrant was issued, the issuing Judge had before him information that [Appellant] had (1) arranged to have sex with an underage girl, (2) has expressed a desire or interest in videotaping the encounter, and (3) was apprehended at the meeting site with a camera in his possession. From this, the Judge found probable cause to believe that there might be evidence of other similar crimes on the camera.
>
> . . . .
>
> There was no need for the Judge, in issuing a warrant, to rely upon faulty "intuitive relationships" between child enticement and child pornography, as there was sufficient independent evidence of an intent and attempt to produce child pornography to support a finding of probable cause that other evidence of similar crimes might be on the camera.

We disagree that Appellant's *failed attempt* to produce child pornography with the camera at issue provided a substantial basis for concluding that probable cause existed to search the same camera. Unlike the appellant in *Colbert* who told the five-year-old girl that he had movies in his apartment, and thus provided a direct factual link between his child enticement activities and the search of his apartment for those videos, there was no direct factual link between Appellant's interactions with "Riley" and the search of Appellant's camera memory card. Unlike the search of the appellant's computer in *Leedy* for child pornography based on file names observed on the screen of the very same computer, Minot police had no information to indicate what might be on Appellant's camera memory card. Instead, they relied on a hunch that Appellant would have previously produced child pornography with the same video-camera and stored it on the camera memory card.

Appellant's case resembles not *Colbert* or *Leedy* but *Nieto*,[6] where a required minimal showing—that the appellant "actually downloaded images (illicit or otherwise) from his cell phone to his laptop, stored images on his laptop, or transmitted images from his laptop"—was not made, and thus there was not a substantial basis to support a probable cause search of the laptop computer. *Nieto,* 76 M.J. at 107. We reach a similar conclusion here. There was no factual showing that Appellant actually produced child pornography with his video-camera and stored it on the camera memory card. Captain DS's affidavit provided no basis, substantial or otherwise, for the judge who issued the warrant to conclude that probable cause existed to search the camera memory card.[7]

---

[6] We note that *Nieto* was decided by the CAAF the month after Appellant's trial. Thus the military judge, who distinguished this case from the facts of *Hoffmann*, did not have *Nieto* available for his consideration in determining whether there was a substantial basis for probable cause.

[7] Although not argued at trial by the Government or found by the military judge as a basis for probable cause, the Government argues on appeal that the search of Appellant's camera "was valid because it was reasonable to think the camera would contain evidence of ownership." We are not persuaded. Captain DS did not request search authorization for the camera in order to search for and seize "evidence of identification of the owner." The camera was seized from the possession of Appellant at the time of his arrest and was an instrumentality of the offense of attempted production of child pornography. Appellant's possession of the camera corroborated his text messaging wherein he indicated his desire to videotape the sex acts with "Riley." Ownership of the camera was not in dispute. We can only conclude that the language in the warrant—"evidence of identification of the owner"—appears there either unintentionally because of the use of a template or intentionally to expand the basis beyond what was presented by and/or sought by the affiant. Neither possibility comports with the requirements of the Fourth Amendment.

**2. Good Faith**

The military judge found at trial and the Government argues on appeal that, even if there was no probable cause to search Appellant's camera, the good faith exception applies. We disagree.

For the good-faith exception to apply, the Government must establish that law enforcement's reliance on a defective authorization is objectively reasonable. *Hoffmann*, 75 M.J. at 127. The Government has the burden of establishing by a preponderance of the evidence the following: (1) the seizure resulted from a search and seizure authorization issued, in relevant part, by a magistrate; (2) the magistrate had a substantial basis for determining probable cause existed; and (3) law enforcement reasonably and in good faith relied on the authorization. Mil. R. Evid. 311(c)(3), 311(d)(5)(A); *Nieto*, 76 M.J. at 107; *see also United States v. Carter*, 54 M.J. 414, 420 (C.A.A.F. 2001) (citation omitted).

As explained above, the judge issuing the search warrant in Appellant's case did not have a substantial basis for determining the existence of probable cause, the second requirement for application of the good-faith exception. Further, Captain DS stated in his affidavit that he believed "the camera may contain evidence of the instant offense"—luring a minor by computer or other electronic means—even though Minot police had information that Appellant lured "Riley" only by the electronic means of cell phone text messaging and apprehended Appellant before Appellant could make any recording with the camera. This assertion by Captain DS is demonstrably untrue, and yet it was relied upon by the judge to issue the search warrant in this case. After examination of the affidavit and search warrant through the "eyes of a reasonable law enforcement official," we find Captain DS did not have an objectively reasonable belief that the judge had a substantial basis for determining the existence of probable cause to search the camera. *Carter*, 54 M.J at 422. Thus, we conclude that the Government failed to establish the Minot Police Department's reliance on the defective search warrant was objectively reasonable. The good faith exception does not apply to justify the search of Appellant's camera.[8] *See Hoffmann*, 75 M.J. at 128.

**3. Inevitable Discovery**

The Government also argues that, because there was probable cause to search Appellant's cell phone for text messages between Appellant and "Riley," "even if the authorization to search the camera were obtained improperly, it

---

[8] Recognizing the tension between the discussion of the good-faith exception in *Hoffmann*, 75 M.J. at 127–28, and *Carter*, 54 M.J. at 419–22, we conclude that under either understanding of the good-faith doctrine, the Government has not met its burden of establishing this exception to the exclusionary rule in Appellant's case.

would have been obtained by another lawful means." While we agree that the search of Appellant's cell phone for evidence of luring a minor (text messages with "Riley") was supported by probable cause, we disagree that discovery of the videos on Appellant's camera as evidence of patronizing adult prostitutes inevitably and *lawfully* flowed from that search.

"The doctrine of inevitable discovery creates an exception to the exclusionary rule allowing admission of evidence that, although obtained improperly, would have been obtained by another lawful means." *United States v. Wallace*, 66 M.J. 5 (C.A.A.F. 2008) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)). "M.R.E. 311(b)(2) embodies this exception, stating that '[e]vidence that was obtained as a result of an unlawful search or seizure may be used when the evidence would have been obtained even if such unlawful search or seizure had not been made.'" *Id.* (alteration in original). For the inevitable discovery doctrine to apply, the Government must establish by a preponderance of the evidence "that when the illegality occurred, the government agents possessed, or were actively pursuing, evidence or leads that would have inevitably led to the discovery of the evidence and that the evidence would inevitably have been discovered in a lawful manner had not the illegality occurred." *Nieto*, 76 M.J. at 106 (citations omitted).

The Government argues that, in searching Appellant's cell phone, investigators would have had to "sift through all of the captured data to find the relevant text messages" and that "in doing so they would have found abundant evidence that Appellant engaged in [patronizing prostitutes] and made specific arrangements to videotape his sexual liaisons with multiple prostitutes." This assertion by the Government, however, is directly rebutted by the testimony of Detective CH. The extraction reports were created and organized by cell phones numbers. The relevant text messages stored on Appellant's phone were readily identifiable by "Riley's" cell phone number and a specific date range— 20 April 2015 to 24 April 2015. We find that the "sifting" of all of Appellant's data from his cell phone was not necessary to find the "Riley" text messages.

"The Fourth Amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a general exploratory rummaging in a person's belongings." *United States v. Richards*, 76 M.J. 365, 369 (C.A.A.F. 2017) (citing *United States v. Carey*, 172 F.3d 1268, 1272 (10th Cir.1999)). In *Richards,* the CAAF considered whether a search authorization was overly broad in failing to limit the dates of communications being searched on electronic devices. In so doing, the CAAF affirmed that the Fourth Amendment's particularity requirement for warrants and the prohibition against general searches apply to search authorizations for electronic devices. The CAAF also recognized, however, the distinct issues of how incriminating evidence may be located on electronic devices and "the dangers of too narrowly

limiting where investigators can go." *Id.* at 370. While reluctant to prescribe ex ante limitations or require particular search methods and protocols for electronic devices, the CAAF found such searches subject to an ex post reasonableness analysis. *Id.* (citing *United States v. Christie*, 717 F.3d 1156, 1167 (10th Cir. 2013)) ("[E]ven if courts do not specify particular search protocols up front in the warrant application process, they retain the flexibility to assess the reasonableness of the search protocols the government actually employed in its search after the fact, when the case comes to court, and in light of the totality of the circumstances.").

> In charting how to apply the Fourth Amendment to searches of electronic devices, we glean from our reading of the case law a zone in which such searches are expansive enough to allow investigators access to places where incriminating materials may be hidden, yet not so broad that they become the sort of free-for-all general searches the Fourth Amendment was designed to prevent.

*Id.*

Having considered the totality of the circumstances in this case, we find the search of Appellant's cell phone and the PDF extraction reports beyond the readily identifiable "Riley" texts captured in the report specific to "Riley's" phone number violated the prohibition against general searches. Thus, we find the text messages containing references to Appellant's desire to video-record sex acts with prostitutes were obtained in violation of the Fourth Amendment. The linchpin of the Government's inevitable discovery claim has been pulled out and its wheels have slipped off the axle.

Assuming *arguendo* that the search of Appellant's phone was not a general search, the discovery of another crime in the course of the search had its own Fourth Amendment implications. In *United States v. Osorio*, 66 M.J. 632 (A.F. Ct. Crim. App. 2008), this court addressed requirements regarding search warrants for computers—and by extension for stored electronic or digital media—when evidence of another crime is discovered.

> [T]here must be specificity in the scope of the warrant which, in turn, mandates specificity in the process of conducting the search. Practitioners must generate specific warrants and search processes necessary to comply with that specificity and then, if they come across evidence of a different crime, stop their search and seek a new authorization. This was not done in this case, therefore the search was invalid.

*Id.* at 637.

The Minot Police Department had probable cause to search Appellant's cell phone, but only for evidence of his crimes connected to "Riley." Assuming it was necessary and reasonable under the Fourth Amendment to search the non-"Riley" extraction reports, at the instant they discovered even a single text message between Appellant and a person other than "Riley" that constituted a solicitation, negotiation, or agreement for that person to engage in a sex act with Appellant in exchange for money or other compensation, they had evidence of a different crime than the one they were investigating. Having discovered a different crime, they were obligated to stop the search and seek new authorization. They did not do so, and thus at that point the continued search of Appellant's cell phone became unlawful.

The record does not establish when evidence of a crime not involving "Riley" was first discovered on Appellant's cell phone. Moreover, it is impossible to determine from the record at what point in the cell phone search the investigators found the first non-"Riley" text-message reference to videotaping—the direct link that would have been necessary to establish a substantial basis for probable cause to search the camera.

We conclude that the search of Appellant's cell phone for anything more than the text messages with "Riley" was unlawful. We further conclude that the Government has failed to show by a preponderance of the evidence (1) that, when the illegality occurred, the Minot Police Department possessed or was actively pursuing evidence or leads that would have inevitably led to the discovery of the camera videos that evidenced Appellant's patronizing adult prostitutes, and (2) that the evidence from Appellant's camera would inevitably have been discovered in a *lawful manner* had not the illegality occurred.

In summary, we conclude that the judge who issued the search warrant did not have a substantial basis to determine that probable cause existed to search Appellant's camera, and that the good faith and inevitable discovery exceptions do not apply in this case. Thus, the military judge abused his discretion in denying the motion to suppress the evidence of the videos found on Appellant's camera.[9]

## B. Prejudice

Although we have determined the military judge erred by admitting the evidence from Appellant's camera, we may not set aside the guilty finding based on that evidence "unless the error materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a).

---

[9] We have also concluded that the benefits of appreciable deterrence of future, unlawful searches outweigh the costs to the justice system of exclusion of the evidence. Mil. R. Evid. 311(a)(3).

In this case, because the admission of the videos violated the Fourth Amendment, the error was of a constitutional dimension.

> A constitutional error is harmless when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. . . . "To say that an error did not 'contribute' to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous. . . . To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record."

*Hoffmann*, 75 M.J. at 128 (citations omitted).

In order for Appellant to be found guilty of the offense of patronizing a prostitute under Article 134, UCMJ, the Government was required to prove, among other elements, that Appellant engaged in a sexual act with another person who was not Appellant's spouse. The videos discovered on Appellant's camera provided direct evidence of Appellant engaged in such acts. We cannot say the error did not contribute to the military judge finding Appellant guilty of patronizing a prostitute, and thus it was not harmless beyond a reasonable doubt. As such, we set aside the findings as to Charge II and its Specification.

Although the cell phone search was not raised as an issue by Appellant, our consideration of the Government's claim of inevitable discovery leads us to conclude that the non-"Riley" texts (the balance of the Government evidence for Charge II and its Specification) were also obtained in violation of the Fourth Amendment. As there remains no admissible evidence in the record to support a prosecution for the offense of patronizing a prostitute under Article 134, UCMJ, a rehearing of the set-aside findings is not appropriate. Charge II and its Specification are dismissed with prejudice.

## C. Sentence Rehearing

Having dismissed Charge II and its Specification, we consider whether, consistent with *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013), we should reassess the sentence or return this case for a sentence rehearing. We are not confident we can accurately reassess an appropriate sentence.

Pursuant to *Winckelmann*, 73 M.J. at 15–16, we use the following four factors to guide our determination whether to reassess a sentence and apply them to Appellant's case:

- Dramatic changes in the penalty landscape and exposure: As a result of the dismissal of Charge II and its Specification, the maximum imposable sentence to confinement was reduced by one year from 42 to 41 years.

- Whether an appellant chose sentencing by members or a military judge alone: Appellant was sentenced by a military judge.

- Whether the nature of the remaining offenses captures the gravamen of criminal conduct included within the original offenses and, in a related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses: Appellant still stands properly convicted of three attempted offenses—patronizing a prostitute, receipt of child pornography, and production of child pornography. Each of these attempted offenses concerned "Riley" and combined capture the gravamen of Appellant's criminal conduct. The evidence of text messages and videos supporting the dismissed specification, however, would not be admissible as aggravation evidence for the attempt convictions.

- Whether the remaining offenses are of the type that we have experience and familiarity with to reliably determine what sentence would have been imposed at trial: Unlike drug offense convictions for example, this court has little experience with reviewing sentences for the offense of patronizing a prostitute.

We are convinced the dismissed offense did contribute to Appellant's adjudged sentence. While the penalty landscape did not change dramatically, Appellant was sentenced by a military judge, and the remaining offenses captured the gravamen of criminal conduct, we are not confident we can gauge the extent of that contribution, given our limited experience with the review of sentences for the offense of patronizing a prostitute. Therefore, considering the facts of Appellant's case and the totality of the circumstances, we find we are not able to determine to our satisfaction that, "absent any error, the sentence adjudged would have been of at least a certain severity . . . ." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). Having so found, we set aside the sentence and authorize a rehearing as to the sentence.

### III. CONCLUSION

The findings as to Charge II and its Specification and the sentence are **SET ASIDE**. The remaining findings are **AFFIRMED**. A rehearing as to the set-aside sentence is authorized. Article 66(e), UCMJ, 10 U.S.C. § 866(e).[10]

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[10] We order sealed Prosecution Exhibit 21, a disc containing sexually explicit videos of Appellant and adult women. The Government will ensure that any copy of Prosecution Exhibit 21 in the possession of the Government, Appellant, or any counsel in the case and any other known copy is destroyed.