# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39425**

————————————

**UNITED STATES**
*Appellee*

**v.**

**David C. BINGHAM**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 12 September 2019

————————————

*Military Judge:* Donald R. Eller, Jr.

*Approved sentence:* Dishonorable discharge, confinement for 6 months, reduction to E-1, and a reprimand. Sentence adjudged 2 December 2017 by GCM convened at the United States Air Force Academy, Colorado.

*For Appellant:* Major Meghan R. Glines-Barney, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Zachary T. West, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Judge POSCH delivered the opinion of the court, in which Senior Judge J. JOHNSON and Judge KEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

POSCH, Judge:

A general court-martial composed of officer members found Appellant guilty, contrary to his pleas, of one specification of possessing child pornography, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10

U.S.C. § 934.[1] Appellant was sentenced to a dishonorable discharge, confinement for six months, reduction to the grade of E-1, and a reprimand. The convening authority approved the adjudged sentence.

Appellant assigns four errors:[2] (1) whether the military judge erred by denying a motion to suppress evidence obtained from a search of Appellant's personal cell phone in violation of the Fourth Amendment to the United States Constitution;[3] (2) whether the military judge erred by admitting evidence of uncharged acts under Military Rule of Evidence (Mil. R. Evid.) 404(b); (3) whether Appellant's conviction is factually and legally sufficient; and (4) whether Appellant is entitled to new post-trial processing because the convening authority erred in summarily denying Appellant's request to defer reduction in rank and the staff judge advocate's recommendation (SJAR) included evidence not considered at trial. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant sought help from a subordinate, Senior Airman (SrA)[4] BH, to recover photos of his son from his personal laptop computer that she had offered to repair. While working on the laptop at her home, SrA BH opened a "downloads" folder and saw a picture of a naked prepubescent female laying on her back, her legs spread, and holding what appeared to be a plastic sex toy near or inserted in her vagina. SrA BH relayed what she found to military investigators who reached out to the Internet Crimes Against Children (ICAC) Task Force in Colorado Springs, Colorado, and a joint investigation ensued. After a search of computers, phones and various media devices among other items of evidence that were seized from Appellant, Appellant was charged with unlawfully possessing the picture SrA BH found on the laptop.

At trial, the Government presented Appellant's admissions to SrA BH after she confronted him with her discovery. The Government also presented other evidence obtained from a forensic analysis of Appellant's password-protected laptop and his cell phone that was admitted as a crime, wrong, or

---

[1] All references to the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] We reordered Appellant's assignments of error.

[3] U.S. CONST. amend. IV.

[4] SrA BH promoted to staff sergeant before trial.

other act under Mil. R. Evid. 404(b). The members convicted Appellant of knowingly and wrongfully possessing a visual depiction of a minor engaging in sexually explicit conduct, such conduct being of a nature to bring discredit upon the armed forces.

## II. DISCUSSION

### A. Authorization to Search Appellant's Cell Phone

Appellant challenges the military judge's denial of his motion to suppress five pictures found on his cell phone that were admitted as a crime, wrong, or other act under Mil. R. Evid. 404(b) to prove Appellant's motive, intent, and absence of mistake in possessing the charged image. We find the military judge did not err in denying the defense motion despite our conclusion that the military judge erred in finding the magistrate had probable cause to seize and search Appellant's cell phone for child pornography.

#### 1. Additional Facts

SrA BH believed the girl depicted in the image she found on the laptop appeared to be about six or seven years old. In the same folder, SrA BH found two additional pictures, each showing a young female in a public setting wearing a cheerleader outfit.[5] One child appeared to be a pre-teen posed provocatively wearing close-fitting shorts and a tight top that exposed her midriff. The second appeared to be a young adolescent posed wearing snug shorts showing her buttocks, and the picture captured similarly attired children in the background.

SrA BH reported what she found to Special Agent (SA) AR of the Air Force Office of Special Investigations (AFOSI) who came to her home. The agent observed the image of the naked prepubescent female and seized Appellant's laptop after obtaining verbal authorization from a military magistrate at the United States Air Force Academy (USAFA). A subsequent written authorization included an accompanying affidavit from SA AR, which averred that the chief of military justice at the USAFA legal office concurred that probable cause existed to seize and search the laptop for "files depicting

---

[5] SrA BH testified she saw photos of little girls dancing around in a bathing suit—children she described as "pageant" girls in a recorded conversation with Appellant. Except where attributable to the testimony of a witness, for consistency our opinion refers to the images as depicting children wearing cheerleader outfits, rather than bathing suits, pageant clothes, or possibly dance troupe apparel. Appellant was not charged with an offense involving the two pictures. However, the pictures were admitted under Military Rule of Evidence 404(b), and are discussed in our decision.

child pornography and evidence of external storage devices that may have been connected" to the laptop.[6]

The AFOSI agents and a civilian detective with ICAC each conducted an initial examination, or "triage" as SA AR testified, of Appellant's laptop, and found the same images SrA BH had discovered. Neither law enforcement agency found evidence that the laptop had been used to upload, download, or connect to another device. The Government presented no evidence that the triage yielded further leads used as a basis for a warrant or authorization that were eventually obtained to seize and search Appellant's other devices, including the cell phone at issue.

Several days after AFOSI agents seized the laptop, and before they seized Appellant's cell phone, SrA BH participated in a face-to-face conversation with Appellant that was recorded with the assistance of the AFOSI agents. SrA BH told Appellant she found "pictures of the little kids" on his laptop that were "just so explicit." Appellant responded, "I think I know what you're talking about . . . [a]nd I actually thought I'd try to—tried to delete those . . . [b]ecause I found them on there one day and . . . I thought I tried to delete them." SrA BH replied she knew Appellant downloaded the pictures multiple times, so he should be honest with her. Appellant responded more definitively, "I thought I got rid of those . . . [y]eah, I thought I deleted all that," and thought maybe his computer "was getting hacked into."

SrA BH then confronted Appellant about the picture "of a little girl putting something in [her] vagina" and alluded to the pictures of "pageant" girls she found. She testified Appellant's face turned red and he acted agitated and nervous. Appellant replied he may have downloaded images using Yahoo Messenger, an Internet messaging service, while drunk, but he thought he had deleted everything. SrA BH asked Appellant if he had similar images "somewhere else," and asked about an older laptop computer she knew Appellant owned. Appellant responded, "[m]aybe on that old one," but did not acknowledge the possibility he might have similar images on his cell phone or any device other than an older laptop.

After the conversation, AFOSI agents apprehended Appellant and brought him to the AFOSI detachment at the USAFA. Meanwhile, a detective from the ICAC Task Force who helped "triage" Appellant's laptop executed a warrant he obtained from the El Paso County District Court to search Appel-

---

[6] The legality of the authorization and subsequent search of the laptop was litigated at trial, but is not an issue Appellant raised on appeal.

lant's off-base residence.[7] AFOSI agents participated with ICAC detectives in the search. The warrant authorized a search for, *inter alia,* "[a]ny and all computer/device system(s)" to include "related communication devices" for files "that would be deemed contraband, such as child pornography to include any sexually explicit images of children." The warrant further authorized a search for "[i]tems that would establish ownership or use of computers/devices and . . . any Internet service accounts accessed to obtain child pornography to include credit card statements, telephone bills, correspondence, or any other identifying documents." Several cell phones were seized, but none were operational and did not include the cell phone at issue. The AFOSI agents maintained custody of the items they seized from Appellant's home.

While in the custody of the AFOSI agents, Appellant was asked for and gave consent to the seizure and search of his personal cell phone he had left at work. The agents retrieved the device from Appellant's office, but Appellant later withdrew his consent before it could be searched. SA AR again contacted the same USAFA magistrate who had given authorization for Appellant's laptop, this time to obtain a more expansive authorization meant for Appellant's cell phone and all of his other electronic devices including the ones seized from Appellant's residence pursuant to the El Paso County District Court's warrant. The magistrate gave a verbal authorization, which he memorialized in writing the next day. In due course, SA AR sent Appellant's cell phone to the Defense Computer Forensics Laboratory (DCFL)[8] along with Appellant's other devices, and evidence obtained from a forensic examination of the cell phone was admitted against Appellant at trial.

---

[7] The scope of the search authorized by the civilian warrant and the magistrate's authorization were essentially the same. However, the military judge examined the warrant, and concluded in his written findings of fact that "cell phones were not identified or authorized to be seized and searched," despite references to computers and communication devices. We disagree and find clear error from a plain reading of the warrant. *United States v. Hoffmann*, 75 M.J. 120, 124 (C.A.A.F. 2016). The warrant referenced an ICAC detective's supporting affidavit but the affidavit was not the subject of testimony or admitted at the suppression hearing.

[8] Before sending off Appellant's devices for forensic analysis, SA AR conducted a triage of the cell phone as he had done with Appellant's laptop, and found nothing of obvious evidentiary value.

**2. The Affidavit Supporting the Magistrate's Probable Cause Authorization**

Accompanying the magistrate's authorization to search Appellant's cell phone was another affidavit SA AR prepared to support his request to search for and seize evidence related to child pornography. The agent described the single image of child pornography found on Appellant's laptop. The affidavit established that Appellant had exchanged text messages with SrA BH related to her beginning repairs to his laptop. The affidavit also explained that Appellant believed the cause of the problem with the laptop was a removable hard drive he used to store movies he illegally downloaded from the Internet.[9] SA AR averred that Appellant left the hard drive on SrA BH's desk where she worked, and she had since turned it over to the custody of the AFOSI.

SA AR attested to his training and experience about "people who collect child pornography files and images," though the agent would later testify that Appellant's case was his first as lead agent on a child pornography investigation and that he lacked relevant specialized training.[10] SA AR averred that a collector often stores the material on storage media devices including cell phones that are kept "in the possession of or under the control of the collector" and "are likely to keep the images or files concealed, but accessible." After describing still more behaviors common among collectors and how they conceal child pornography images and related materials, SA AR attested, "[t]his requires that the entire contents of [Appellant's] digital storage media and their input/output devices be thoroughly examined to determine which particular files is [sic] evidence or instrumentalities of crime." As to Appellant's personal cell phone specifically, SA AR stated that, again, based on his experience and training, Appellant's "cellular phone is a media device and could contain child pornography."

Aside from detailing the agent's experience-based profile of child pornography collectors, the affidavit related that the ICAC detective had obtained a warrant to search and seize the same types of electronic media devices that SA AR identified in the affidavit, and that the execution of the warrant re-

---

[9] Appellant was not charged with an offense involving the movies, and the contents of the removable hard drive were not used against Appellant at trial.

[10] The agent had been involved in cases involving "[c]ell phones and some other CP cases," did not have specialized training in computers or child pornography investigations, and acknowledged his experience was primarily drug and sexual assault cases. By "CP," we understand the agent meant child pornography.

sulted in seizure of these items from Appellant's home. Finally, the affidavit declared that SA AR had briefed the information in the affidavit to the chief of military justice at the USAFA legal office, who advised that probable cause existed to seize and search Appellant's cell phone and other devices for all data contained within those devices that "potentially contains child pornography."

In spite of SA AR's knowledge of SrA BH's conversation with Appellant, the affidavit omitted Appellant's admission that he may have downloaded the images SrA BH found using the Yahoo Internet messaging service.[11] It also left out Appellant's admission that images similar to the one SrA BH discovered might be found on an older laptop. Likewise, the affidavit did not indicate that two pictures of young females wearing cheerleader outfits were found in the same folder as the image at issue on Appellant's laptop. Information was also left out about the triages performed by AFOSI and the ICAC task force that uncovered no evidence the laptop had been connected to, or used to transfer data with, another device. The record of the suppression hearing did not establish whether the agent briefed this information to the chief of military justice or why it was left out of the affidavit.

### 3. The Defense Motion to Suppress Evidence Found on the Cell Phone

Forensic analysis of Appellant's cell phone by a DCFL examiner revealed five cached pictures, which the Government used in its case to show Appellant's motive, intent, and absence of mistake in possessing the single image of child pornography. *See* Mil. R. Evid. 404(b). Four pictures were authenticated as showing Appellant's hand around his erect penis in front of a computer screen displaying images of children. In three of the four, the tip of Appellant's penis is displayed in the foreground in close proximity to a child's mouth or crotch depicted in the background. A fourth picture showed Appellant holding his penis superimposed over an image of a young child sitting on the lap of an older individual. A fifth picture displayed a female child, lying on her stomach, with an adult hand shown holding open the child's buttocks, revealing the child's genitalia.

Prior to trial, Appellant moved to exclude the five pictures and the military judge held a suppression hearing at an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session. None of the facts asserted in the affidavit were disputed at the hearing. The dispute was whether the facts SA AR presented to the mag-

---

[11] The affidavit did indicate, however, that SrA BH concluded that the Yahoo program installed on the laptop was causing it to crash.

istrate constituted probable cause. Appellant argued the affidavit did not establish a sufficient nexus between the single image of child pornography found on Appellant's laptop and his phone. Appellant reasoned that a "generalized profile of individuals who use child pornography" without "any particularized information" regarding Appellant's cell phone was insufficient to provide a substantial basis for determining probable cause. Appellant also argued that the Government failed to prove application of the good-faith doctrine. The Government argued "there was a nexus to establish a reasonable belief that [Appellant] possessed child pornography on his cell phone, considering an image of child pornography had been downloaded to his personal laptop." The Government also argued that the evidence should not be suppressed because the AFOSI agents acted in good faith.[12]

SA AR and the magistrate both testified at the suppression hearing. The AFOSI agent explained the steps he took to seize Appellant's laptop after SrA BH showed him the image she had found. He believed Appellant may have downloaded similar images to another device, such as his phone, after listening to the recording of SrA BH's conversation with Appellant. He sought verbal authorization to seize and search Appellant's other devices, including the cell phone at issue, because Appellant had acknowledged to SrA BH the possibility that images similar to the one she discovered might still exist on an older laptop. However, as discussed previously, SA AR did not include any information from the recorded conversation in his affidavit, and he testified that nothing more was briefed to the magistrate prior to the magistrate granting the second search authorization besides the information in the affidavit.

The magistrate confirmed that the scope of SA AR's briefing did not go beyond the information already contained in the affidavit. The magistrate recalled SA AR's explanation that child pornography is commonly found on storage devices that could be connected to a laptop containing child pornography. The magistrate found the explanation reasonable and authorized the seizure and search of storage devices that Appellant could have connected to his laptop, even though he could not recall whether or not SA AR told him any evidence established Appellant's laptop had been connected to the cell phone. Further, the magistrate understood Appellant's laptop had been used

---

[12] The trial counsel also argued against suppression because investigators "would have come across the images during their search of the phone for text messages." The military judge made no findings with regard to inevitable discovery, Mil. R. Evid. 311(c)(2), *accord United States v. Nieto*, 76 M.J. 101, 106–07 (C.A.A.F. 2017), and the Government does not pursue this tack on appeal.

to download the image of child pornography from the Internet, and considered that Appellant's other electronic devices, including the cell phone at issue, could have been used to access and download that type of material from the Internet.[13]

### 4. The Military Judge's Ruling Denying the Motion to Suppress

Following the suppression hearing the military judge denied the defense motion, and relied on SA AR's affidavit in his written ruling. The military judge concluded that the magistrate had a substantial basis to find probable cause to seize and search the cell phone. The military judge also concluded the investigators acted in good faith reliance on the search authorization. In the alternative, the military judge concluded that exclusion of the evidence found on the cell phone was "not warranted in the absence of any evidence of police misconduct notwithstanding any possible violations of [Appellant's] Fourth Amendment rights." Accordingly, the military judge admitted the evidence that the Defense sought to exclude.

### 5. Legal Principles

We review a military judge's ruling on a motion to suppress for an abuse of discretion, viewing the evidence in the light most favorable to the prevailing party. *United States v. Hoffmann*, 75 M.J. 120, 124 (C.A.A.F. 2016) (citation omitted). The military judge's findings of fact are reviewed for clear error while conclusions of law are reviewed de novo. *Id*. An abuse of discretion occurs when the military judge's findings of fact are clearly erroneous or he misapprehends the law. *See United States v. Clayton*, 68 M.J. 419, 423 (C.A.A.F. 2010) (citation omitted).

#### a. Review of Probable Cause Determinations

When reviewing a military magistrate's issuance of a search authorization, we "do not review [the military magistrate's] probable cause determination de novo." *Hoffmann*, 75 M.J. at 125. Instead, we examine whether a "military 'magistrate had a substantial basis for concluding that probable cause existed.'" *United States v. Nieto*, 76 M.J. 101, 105 (C.A.A.F. 2017) (quoting *United States v. Rogers*, 67 M.J. 162, 164–65 (C.A.A.F. 2009)). "The task of

---

[13] Although the magistrate found evidence of text messages between Appellant and SrA BH probative of Appellant's ownership of his devices, SA AR testified that he did not seek search authorization for the cell phone on that basis. Additionally, the magistrate was clear that the authorization he gave was to search the cell phone for child pornography, and not text messages, which is consistent with the scope of SA AR's affidavit on which the magistrate relied.

the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Great deference is given to the magistrate's probable cause determination due to the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. *Gates*, 462 U.S. at 236 (citations omitted).

However, as the Supreme Court held in *United States v. Leon*, 468 U.S. 897, 914 (1984), our deference is "not boundless." A reviewing court's probable cause analysis focuses on "the evidence as set out in the four corners of the requesting affidavit . . . illuminat[ed] by factors such as the veracity, reliability, and basis of knowledge of the individual presenting the evidence." *United States v. Leedy*, 65 M.J. 208, 214 (C.A.A.F. 2007) (alteration in original) (citations and internal quotation marks omitted). "[C]ourts should not invalidate warrants by interpreting affidavits in a hyper-technical, rather than a common sense, manner." *United States v. Gallo*, 55 M.J. 418, 421 (C.A.A.F. 2001) (quoting *Gates*, 462 U.S. 213, 236 (1983) (citations and alteration omitted)).

### b. Good Faith Exception to the Exclusionary Rule

If a magistrate did not have a substantial basis to find probable cause, a general rule of exclusion ordinarily applies and the evidence at issue cannot be used against an appellant. Mil. R. Evid. 311(c)(3); *Hoffmann*, 75 M.J. at 124. A good faith exception to this general rule of exclusion applies when law enforcement officials rely on a magistrate's probable cause determination that is later found to lack a substantial basis. *See* Mil. R. Evid. 311(c)(3)(A)–(C); *United States v. Carter*, 54 M.J. 414, 421 (C.A.A.F. 2001) (citation omitted). Evidence obtained when officials rely on a subsequently invalidated magistrate's authorization may be used against an appellant if three requirements are met:

> (1) the "search or seizure resulted from an authorization to search, seize or apprehend issued by an individual competent to issue the authorization under Mil. R. Evid. 315(d) or from a search warrant or arrest warrant issued by competent civilian authority," Mil. R. Evid. 311(c)(3)(A);

> (2) a "law enforcement official had an objectively reasonable belief that the magistrate had a 'substantial basis' for determining the existence of probable cause." *United States v. Perkins*, 78 M.J. 381, 387 (C.A.A.F. 2019) (quoting *Carter*, 54 M.J. at 422 (concluding the words "substantial basis" in Mil. R. Evid. 311(c)(3)(B) "examines the affidavit and search authorization

through the eyes of a reasonable law enforcement official executing the search authorization")); and

(3) the "officials seeking and executing the authorization or warrant reasonably and with good faith relied on the issuance of the authorization or warrant. Good faith is to be determined using an objective standard," Mil. R. Evid. 311(c)(3)(C).

The military good faith exception to the exclusionary rule has been understood by our superior court as set out by the Supreme Court in *Leon*, 468 U.S. at 897. *See Carter*, 54 M.J. at 421; *see also Perkins*, 78 M.J. at 388 ("*Carter* contains a thorough consideration of a complicated issue, giving effect to all parts of [Mil. R. Evid.] 311."). The exception recognizes that exclusion of evidence "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity," *Leon*, 468 U.S. at 918–19, when investigators "act with an objectively 'reasonable good faith belief' that their conduct is lawful." *Davis v. United States*, 564 U.S. 229, 238 (2011) (citing *Leon*, 468 U.S. at 909). The test is "whether a reasonably well-trained officer would have known that the search was illegal" in light of "all of the circumstances." *Herring v. United States*, 555 U.S. 135, 145 (2009) (quoting *Leon*, 468 U.S. at 922 n.23).

In *Leon*, the Supreme Court listed four circumstances where the good faith exception would not apply: (1) where the magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) where the magistrate "wholly abandoned his judicial role;" (3) where the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) where the warrant is so "facially deficient . . . in failing to particularize the place to be searched or the things to be seized . . . that the executing officers cannot reasonably presume it to be valid." 468 U.S. at 923 (citations omitted).

### c. Limited Application of the Exclusionary Rule under Military Rule of Evidence 311(a)

The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 348 (1974). Whether to apply the exclusionary rule is "an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *Gates*, 462 U.S. at 223 (citations omitted). The Supreme Court has cautioned that "exclusion 'has always been our last resort, not our first im-

pulse.'" *Herring*, 555 U.S. at 140 (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)).

Before the Supreme Court's decision in *Herring*, the exclusionary rule applied when evidence did not fit within one of several delineated exceptions to include the good faith exception discussed previously. In *Herring*, the Supreme Court provided greater limitations to its application. The Court held:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

*Id*. at 144.

On 20 May 2016, the President signed Executive Order 13,730, amending Mil. R. Evid. 311 to require additional considerations before excluding evidence when an appellant would otherwise have grounds to challenge a search or seizure under the Constitution of the United States as applied to members of the armed forces.[14] As amended, Mil. R. Evid. 311(a) incorporates the balancing test limiting the application of the exclusionary rule set forth in *Herring*. *See Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*), App. 22, at A22–20; *see also United States v. Wicks*, 73 M.J. 93, 104 (C.A.A.F. 2014).

The amended Mil. R. Evid. 311(a) hews closely to *Herring's* meaningful deterrence standard with an "appreciable deterrence" standard for the military. It provides that evidence is inadmissible against an appellant if it satisfies three criteria:

> (1) the accused makes a timely motion to suppress or an objection to the evidence under this rule;

> (2) the accused had a reasonable expectation of privacy in the person, place, or property searched; the accused had a legitimate interest in the property or evidence seized when challenging a seizure; or the accused would otherwise have grounds to object to the search or seizure under the Constitution of the United States as applied to members of the Armed Forces; and

---

[14] Exec. Order 13,730, 81 Fed. Reg. 33331, 33351 (20 May 2016) ("2016 Amendments to the *Manual for Courts-Martial, United States*").

(3) *exclusion of the evidence results in appreciable deterrence of future unlawful searches or seizures and the benefits of such deterrence outweigh the costs to the justice system.*

Mil. R. Evid. 311(a) (emphasis added).

**6. Analysis**

### a. The Magistrate's Probable Cause Determination[15]

Appellant renews his claim raised at trial that the military magistrate did not have a substantial basis to find probable cause to search Appellant's cell phone. On appeal, the Government renews its argument that Appellant fit the profile described by SA AR in his affidavit. The Government also argues it was commonsense and reasonable for the magistrate to infer that somebody who accessed child pornography on the Internet using a laptop computer would do so on other devices, such as a personal cell phone, as well. We disagree such an inference is reasonable and find that SA AR's affidavit did not provide the necessary substantial basis for the magistrate who issued the authorization to find probable cause to search Appellant's cell phone.

As both parties acknowledge, the central issue in the case is the requirement that there be a particularized nexus linking Appellant's misconduct involving his laptop to his cell phone. The military judge recognized this as well, and was satisfied the affidavit demonstrated the required nexus, citing *Gallo*, 55 M.J. at 418, *Clayton*, 68 M.J. at 419, and *Nieto*, 76 M.J. at 101, to reach this conclusion. However, we are not similarly convinced and conclude the finding of fact that Appellant "fell within the specific category described in the affidavit and fit the profile described" was clearly erroneous. We also find that the military judge erred in finding Appellant's case distinguishable from *Nieto*, and thus misapprehended the applicable law regarding the nexus required when evidence found on one device is the basis for search authorization of a second device.

Appellant's case most resembles *Nieto*, where the appellant did not meet an affiant-investigator's experience-based profile, and thus there was not a substantial basis to support a probable cause search of a second device. *Nieto*, 76 M.J. at 107–08. The appellant in *Nieto* was reported to be using the camera on his cell phone to record images of Soldiers using the latrine. *Id.* at 103. A magistrate granted authorization to search for and seize a laptop computer

---

[15] The military judge did not evaluate whether there was a substantial basis to find probable cause by the official who issued the El Paso County District Court's warrant for the search and seizure of Appellant's media devices including the cell phone.

that the appellant may have owned in reliance on an investigator's profile that Soldiers "normally" download their photos to devices with a larger storage capacity such as computers and hard drives to facilitate posting or sharing their pictures with others. *Id*. at 104–05. Investigators searched for and discovered a laptop that belonged to the appellant and it was found to contain incriminating pictures and videos. *Id*. at 105. At trial the defense moved unsuccessfully to suppress the evidence arguing there was an insufficient nexus between the appellant's alleged criminal behavior with his cell phone and the search of his laptop computer. *Id*.

The CAAF agreed with the defense and took particular exception to the investigator's "technologically outdated" profile about how Soldier's "normally" transfer cell phone photos to other devices. *Id*. at 107. A modern cell phone, i.e. "smart phone," "by itself" is able "to serve both as the instrumentality of the crime and as a storage device for the fruit of that crime." *Id*. The generalized profile, therefore, "was of little value in making a probable cause determination." *Id*.

More significant to the *Nieto* holding, the CAAF found the investigator's generalized profile was "not based on a firm factual foundation" because no information was provided to the magistrate that the appellant owned a device other than his cell phone, that there had been data transfers of any kind from his phone to another device, or that he had used another device to store or transmit data. *Id*. at 107. The CAAF concluded that there was no showing the appellant fit the profile of a Soldier who would download his photos to a device with a larger storage capacity or that he actually did.[16] As a result, the CAAF held the magistrate did not have a substantial basis to conclude that probable cause existed to seize the appellant's laptop. *Id*. at 108.

The CAAF observed that "a contrary holding could be construed as providing law enforcement with broad authority to search and seize *all* of an accused's electronic devices and electronic media merely because the accused used a cell phone in furtherance of a crime." *Id*. at 108 n.5. The CAAF noted

---

[16] The CAAF relied on *United States v. Macomber*, 67 M.J. 214, 220 (C.A.A.F. 2009), for the legal principle that

> a law enforcement officer's generalized profile about how people normally act in certain circumstances does not, standing alone, provide a substantial basis to find probable cause to search and seize an item in a particular case; there must be some additional showing that the accused fit that profile or that the accused engaged in such conduct.

*Nieto*, 76 M.J. at 106.

that such plenary authority—"based on generalized profiles created by law enforcement and on the generalized observation about the ease with which [digital] media may be replicated on a multitude and array of electronic devices[—]would run counter to the principle that law enforcement officials must provide *specific and particular* information in order for a magistrate to determine that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (first alteration in original) (internal quotations omitted).

In *Nieto* and the other cases relied on by the military judge, the CAAF considered whether a fair inference may be drawn that evidence of a crime will be found in a particular place because an appellant's actions appeared to be consistent with either a commonsense understanding,[17] or a law enforcement officer's experience-based profile, of how people normally act in a particular circumstance. As a rule—which to us seems most germane when evaluating if there is a nexus founded on a commonsense understanding of behavior—the CAAF unvaryingly decided that a "nexus may 'be inferred from the facts and circumstances of a particular case,' including the type of crime, the nature of the items sought, and reasonable inferences about where evidence is likely to be kept." *Nieto*, 76 M.J. at 106 (quoting *Clayton* 68 M.J. at 424); *see Gallo*, 55 M.J. at 422. When evaluating whether a nexus is shown because an appellant fits a valid experience-based profile, the "'profile alone without *specific nexus* to the person concerned cannot provide the sort of articulable facts necessary to find probable cause to search' or seize." *Nieto*, 76 M.J. at 106 (emphasis added) (citing *United States v. Macomber*, 67 M.J. 214, 220 (C.A.A.F. 2009)).

---

[17] In *Clayton*, the CAAF relied on the "practical, commonsense understanding," 68 M.J. at 424, of the magistrate who knew the appellant was a subscriber to an Internet group formed to discuss, share, and distribute child pornography, but had no independent evidence the appellant had child pornography stored on, *inter alia,* a personal computer that was located in his quarters. *Id*. 421–26. The CAAF embraced observations made by a number of courts that "a person's voluntary participation in a group that had as its purpose the sharing of child pornography supported a probable cause determination that child pornography would be found on the appellant's computer." *Id*. at 424. The *Clayton* magistrate had more evidence on which to base his findings than the magistrate in this case. In the instant case, a single image of unknown source on one device was tendered as the basis to search for other images acquired at other times on other devices, with no particularized reason to believe Appellant, unlike the appellant in *Clayton*, was linked to multiple images or collectors of child pornography.

Relying on the legal principles we discern from *Gallo*, *Clayton*, and *Nieto*, we evaluate the nexus between Appellant's laptop and his cell phone based on the particular facts presented to the military magistrate, that is, the "four corners of the requesting affidavit." *Leedy*, 65 M.J. at 214. We begin with SA AR's experience-based profile, which we assume *arguendo* had validity. *But cf. Nieto*, 76 M.J. at 107. Second, we examine whether it was reasonable for the magistrate to infer that somebody who would access child pornography on the Internet using a laptop computer would do so on other devices, such as a personal cell phone, as well.

SA AR's affidavit did not expressly conclude or state that Appellant fit the profile of a child pornography collector. The affidavit provided little factual support that Appellant fit the agent's description, and under the circumstances it was not difficult to understand why. The magistrate had to assume Appellant fit the profile from a single image found on Appellant's laptop. The profile that SA AR explained to the magistrate in his affidavit—founded not insignificantly on the agent's own training and experience—unmistakably pertained to "people who collect"[18] child pornography. The agent relied on the profile of a collector four times in the affidavit he himself prepared. We decline to foretell whether SA AR's training and experience would countenance "collector" to have any meaning other than a plain one, or conclude on our own that the profile was inescapably intended to include collectors and non-collectors alike.

Like the magistrate, the military judge also relied on SA AR's profile. The military judge distinguished *Nieto* observing that "the nature of this crime is distinct from that in *Nieto*," noting that Appellant "was suspected of possessing child pornography," and that SA AR's "affidavit sets out with particularity the concerns of law enforcement as to what a person in those circumstances may do." In fact, SA AR's affidavit described the behaviors of child pornography collectors at the same time averring that Appellant possessed a single image of child pornography. In the same way that there was little showing that the appellant in *Nieto* fit the profile of a Soldier who would download his photos to a device with a larger storage capacity or that he actually did, the affidavit here did not provide sufficient information for the magistrate to independently determine that Appellant either fit the profile of a collector of child pornography or that he actually did obtain and store multiple images of contraband on other media devices. Accordingly, we find an

---

[18] *See, e.g.*, *Collect*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("To gather together; to bring scattered things (assets, accounts, articles of property) into one mass or fund; to assemble.").

insufficient "specific nexus" linking Appellant to SA AR's experience-based profile, *id.*, and conclude that the magistrate did not have a substantial basis for determining that probable cause existed to seize Appellant's cell phone by reason that Appellant fit a generalized profile. Consequently, the military judge's conclusion that, "[u]nlike *Nieto*, this accused fell within the specific category described in the affidavit and fit the profile described" was error.[19]

Second, we examine whether there was a substantial basis to find probable cause based on the inferences of the magistrate. Specifically, we look at whether it was reasonable for the magistrate to infer that child pornography would be found on Appellant's cell phone because it was found on Appellant's laptop. We conclude the Government has not shown a sufficient nexus.

As described earlier, the magistrate relied on his own understanding that Appellant's laptop was used to download the image of child pornography from the Internet, and considered that Appellant's other electronic devices, including the cell phone at issue, could have been used to access and download that type of material from the Internet. The magistrate relied on SA AR's explanation that child pornography is commonly found on storage devices that could be connected to a laptop containing child pornography. The magistrate found that explanation reasonable and authorized the seizure and search of storage devices that Appellant could have connected to his laptop. The magistrate testified at the suppression hearing that he could not recall whether or not SA AR told him any evidence established Appellant's laptop had been connected to the cell phone. In fact, there was no evidence that it had.

Again, Appellant's case resembles *Nieto*, which found invalid an inference that a cell phone would be connected to a laptop, only the devices are reversed here. The CAAF in *Nieto* rejected an inference that a magistrate could give "broad authority to search and seize *all* of an accused's electronic devices

---

[19] In *Gallo*, investigators knew that the appellant's computer at work had been used to solicit and download numerous images of child pornography using the Internet, and that Internet files of unknown content and origin had been downloaded or uploaded from the computer hard drive to diskettes. *Id.* at 420–22. Relying on these transfers and on the investigator's experience that the appellant fit a profile of a person who would "collect sexually explicit or suggestive materials involving children," and was apt to conceal child pornography and related materials in his home, the CAAF upheld a magistrate's finding of probable cause to search the appellant's home computer. *Id.* at 420–23. Unlike *Gallo*, Appellant did not fit the profile of collector and the magistrate relied on an inference to conclude the image SrA BH found was downloaded from the Internet, as opposed to, for example, an e-mail Appellant may have received.

and electronic media" merely because the accused used, in that case, a cell phone in furtherance of a crime. *Id.* at 108 n.5. Here, the magistrate similarly lacked any particularized information regarding Appellant's cell phone or its connection to the laptop specifically, or criminal activity generally.

Accordingly, lacking a particularized nexus linking Appellant's misconduct involving his laptop to his cell phone, we conclude SA AR's affidavit did not provide the necessary information for there to be a substantial basis for the magistrate's probable cause determination. We find the military judge abused his discretion by finding otherwise.

### b. Good Faith Exception to the Exclusionary Rule

The military judge found at trial, and the Government argues on appeal, that even if the magistrate's authorization lacked probable cause to search Appellant's cell phone, the good faith exception to the exclusionary rule applies and the evidence was properly admitted. There is no question that the first requirement of the exception is met: the magistrate had the authority to authorize SA AR's seizure and search of Appellant's cell phone. We agree with the military judge's findings and conclude that the second and third requirements for the good faith exception in Mil. R. Evid. 311(c)(3) are satisfied as well.

We first consider whether SA AR, who sought and executed the warrant, and the DCFL personnel who examined the phone and analyzed the evidence from it, "had an objectively reasonable belief that the magistrate had a substantial basis for determining the existence of probable cause." *Perkins*, 78 M.J. at 387 (internal quotation marks omitted). We find that they did.

The magistrate inferred from the information SA AR provided to him that Appellant's laptop was used to download child pornography from the Internet, and inferred again that Appellant's other electronic devices, including the cell phone at issue, could have been used to access and download the same type of material in the same manner. Even though we reach the conclusion that this determination and one that Appellant fit the profile of a collector was an insufficient nexus to establish probable cause, nonetheless, we find that the investigators who relied on the determination had an objectively reasonable belief that it was. SA AR's communication with and apparent reliance on the advice of the chief of military justice, a judge advocate, for both search authorizations, is an important factor. *Id.* at 381 (finding the court of criminal appeals properly identified that, *inter alia*, apparent reliance on the advice of appropriate government lawyers supports an objectively reasonable

belief). Also significant is that *Nieto* had not been decided when SA AR sought the advice of counsel.[20] Although *Nieto* did not markedly alter existing precedent or decide an issue of first impression involving nexus, *id.*, 76 M.J. at 107 n.3, nevertheless, *Nieto* examined the reasonableness of a magistrate's inferences from facts analogous to the case at hand. Accordingly, *Nieto* is an instructive decision on the sufficiency of the evidence that is necessary before a magistrate may draw a reasonable inference linking an alleged crime on one device and the files that may exist on another, which is precisely the posture here.

Second and related, the linkage between Appellant's laptop and cell phone in the authorization and the affidavit on which the authorization relied was "more than a 'bare bones' recital of conclusions," *Carter*, 54 M.J. at 421 (internal quotation marks added), considering that *Nieto* had yet to be decided, and was not a unanimous decision when it was. *Nieto*, 76 M.J. at 111 (Stucky, J., dissenting) ("A nexus between Appellant, the crime he was suspected of, and his laptop computer is quite apparent."). Objectively reasonable minds, even eminent ones, can be at variance in close cases until subtle changes to law by way of reaffirmed precedent applied to new cases take hold. The fact that SA AR knew that the judge advocate and the magistrate came to the same conclusion is a compelling reason to find that he believed the magistrate had a substantial basis to find a nexus between Appellant's devices, and thus probable cause.

Turning to the final requirement, we consider whether SA AR and DCFL personnel "reasonably and with good faith relied on the issuance of the authorization," Mil. R. Evid. 311(c)(3)(C), and find that they did. Critical to our finding is our factual determination that SA AR neither falsely nor recklessly mislead the magistrate by omitting information in his affidavit as evident from what he knew at the time he sought authorization. He knew from Appellant's conversation with SrA BH that images similar to the sexually explicit image discovered on the laptop might have been downloaded to an older laptop using Yahoo Messenger. The agent was reasonably aware Appellant might have an interest in viewing images of young female children from images of other children wearing cheerleader uniforms that SrA BH found in the same folder as the sexually explicit one.

---

[20] The investigation was initiated on 11 March 2016, and a DCFL report dated 9 December 2016 was admitted as Prosecution Exhibit 6. We note the CAAF decided *Nieto* on 21 February 2017.

Knowing what he did, the agent believed Appellant may have downloaded similar images to another device, such as the cell phone at issue. The agent was also aware that information he supplied to the ICAC Task Force was used as a basis for the El Paso County District Court's warrant that authorized the search of Appellant's home for the cell phone and other devices. Applying an objective standard to determine good faith, we conclude that the agent's belief was objectively reasonable and that his omission of information on which he may have relied was not bad faith.

Furthermore, even with our finding that probable cause was lacking because of the failure to establish a nexus with Appellant's cell phone, we find that the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. The affidavit particularized both the place to be searched (Appellant's person) and the item to be seized. We find the magistrate's authorization in reliance on the affidavit was not so "facially deficient" that the executing officers could not "reasonably presume it to be valid." *Id.*; *see also Perkins*, 78 M.J. at 389 ("the search authorization was not facially defective because it identified the place to search . . . and described in detail what to look for.").

Accordingly, even though the magistrate's search authorization lacked probable cause, we find the requirements of the good faith exception to the exclusionary rule, Mil. R. Evid. 311(c)(3), were met, and evidence derived from the seizure and search of Appellant's cell phone was admissible.

### c. Appreciable Deterrence and the Cost of Exclusion

In addition to finding the good faith exception to the exclusionary rule applicable, we consider whether exclusion of the evidence would result in appreciable deterrence of future unlawful searches or seizures and if the benefits of deterrence outweigh the costs to the justice system. Mil. R. Evid. 311(a)(3).

In conducting the balancing test, the military judge concluded that exclusion of the evidence found on the cell phone was not appropriate. The military judge found no evidence of any law enforcement misconduct and reasoned that the evidence found on the cell phone was important in establishing Appellant's sexual interest in young girls under Mil. R. Evid. 404(b).

Weighing the factors set forth in Mil. R. Evid. 311(a)(3), we agree. Following the discovery on Appellant's laptop of a single image of child pornography, AFOSI agents and a civilian detective with the ICAC Task Force executed a search authorization and warrant obtained from their respective jurisdictions in order to respect and comply with the Fourth Amendment requirements. SA AR prudently sought the advice of a judge advocate. The affidavit's deficiency in finding a nexus where there was none was not shown to be either deliberate or reckless. In fact, important information that may have

enhanced a finding of probable cause was omitted. We agree that the evidence offered under Mil. R. Evid. 404(b) was valuable to show that Appellant was the person who accessed, downloaded, and possessed the charged image.

On these facts, we find that exclusion offers little to no appreciable deterrence value and is outweighed by the cost of exclusion. Accordingly, we conclude that the totality of facts and circumstances does not satisfy the criteria of Mil. R. Evid. 311(a)(3), and exclusion of the evidence is not appropriate.

## B. Admissibility of Appellant's Motive and Intent to Possess Child Pornography and Absence of Mistake under Mil. R. Evid. 404(b)

Before trial, the Government disclosed to the Defense its intent to offer evidence of pictures found and chatrooms visited on Appellant's laptop as well as five pictures discovered from the forensic examination of his cell phone that was the subject of Appellant's suppression motion. The Government offered the evidence as a permitted use of a "crime, wrong, or other act" under Mil. R. Evid. 404(b) to show Appellant's motive and intent to possess child pornography and absence of mistake. Appellant argues the military judge erred when he admitted the evidence because it constituted improper character evidence. We disagree and find no error.

### 1. Additional Background

#### a. Laptop Computer

A forensic examiner from the DCFL testified in detail about evidence SrA BH discovered from a search of Appellant's password-protected laptop. Within the allocated space of a "downloads" folder where the charged image was found were the two images of children wearing cheerleader uniforms, each separately downloaded 34 minutes before and 11 minutes after the charged image had been downloaded. The DCFL examiner found fewer than ten files in the folder, none of which depicted adult pornography. The only images in the folder were the three images of children.

The DCFL examiner determined Appellant's laptop had been used to download the three images from an Internet forum where users create chatrooms and post pictures. The Government presented evidence found on Appellant's laptop of multiple chatrooms visited during the 1 hour and 40 minute period that spanned before and after the charged image had been downloaded. The examiner explained he was familiar with the meaning of the names of some of the 14 chatrooms because they were typical of the naming conventions he recognized from other child pornography investigations. He explained "nophuzzyet" meant lack of pubic hair, in addition to making clear the meaning of "ypusy" (young pu**y), "ynqfussy" (young and not quite fuzzy), and "ytahboo" (young taboo). Although some of the nomenclature was above suspicion even if the terms might be associated with children (e.g.,

"gymnastics" and "Chirleading"), the names of other chatrooms implied more illicit pursuits even if not directly associated with children or child pornography (e.g., "ohsowrong" and "NastyStuff").

### b. Cell Phone

The DCFL examiner also testified about evidence discovered from a search of Appellant's cell phone that was the subject of Appellant's unsuccessful motion to suppress. As discussed previously, four pictures obtained from the cell phone showed Appellant holding his erect penis in front of a computer screen displaying images of children. A fifth picture showed a female child, lying on her stomach, with an adult hand holding open the child's buttocks and exposing the child's genitalia.

### 2. Law

A military judge's ruling under Mil. R. Evid. 404(b) and Mil. R. Evid. 403 will not be disturbed except for a clear abuse of discretion. *United States v. Morrison*, 52 M.J. 117, 122 (C.A.A.F. 1999) (citation omitted). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

Mil. R. Evid. 404(b) provides that evidence of a crime, wrong, or other act by a person is not admissible as evidence of the person's character in order to show the person acted in conformity with that character on a particular occasion and cannot be used to show predisposition toward crime or criminal character. However, such evidence may be admissible for another purpose, including to show, *inter alia*, motive, intent, plan, absence of mistake, or lack of accident. Mil. R. Evid. 404(b)(2); *United States v. Staton*, 69 M.J. 228, 230 (C.A.A.F. 2010) (citation and footnote omitted). The list of potential purposes in Mil. R. Evid. 404(b)(2) "is illustrative, not exhaustive." *United States v. Ferguson*, 28 M.J. 104, 108 (C.M.A. 1989).

We apply a three-part test to review the admissibility of evidence under Mil. R. Evid. 404(b): (1) Does the evidence reasonably support a finding by the factfinder that Appellant committed other crimes, wrongs, or acts? (2) Does the evidence of the other act make a fact of consequence to the instant offense more or less probable? (3) Is the probative value of the evidence of the other act substantially outweighed by the danger of unfair prejudice under Mil. R. Evid. 403? *United States v. Reynolds*, 29 M.J. 105, 109 (C.A.A.F. 1989) (citations omitted). "If the evidence fails to meet any one of these three standards, it is inadmissible." *Id.*

**3. Analysis**

The military judge applied the first *Reynolds* prong—whether the evidence reasonably supports a finding that Appellant engaged in other acts—and was satisfied the factfinder could reasonably determine Appellant was the person responsible for accessing Internet chatroom websites and downloading the three images. As to images found on the cell phone, the military judge concluded that Appellant's "ownership and access to the phone" was sufficient. We find the military judge's factfinding on the first *Reynolds* prong was supported by the evidence of record. Thus, we conclude that the military judge properly applied the first *Reynolds* prong.

The military judge applied the second *Reynolds* prong—whether evidence of the other acts makes a fact of consequence to the instant offenses more or less probable—and found the uncharged acts were evidence of an interest in minors engaged in sexual activities. The military judge also determined that evidence of actions close in time to when the charged image had been downloaded and the nature of the chatrooms visited could be relied on to establish both the identity of the person using the laptop and interest in the subject matter of child pornography.

We find the military judge correctly applied the second *Reynolds* prong. The facts of consequence in this litigated case included that Appellant's possession of child pornography was done knowingly and wrongfully. *See* 2016 *MCM*, pt. IV, ¶ 68b.b.(1)(a). The Government had the burden to prove these elements beyond a reasonable doubt. As properly instructed by the military judge, "an act is done 'knowingly' if done voluntarily and intentionally," in contrast to an act that is "done because of mistake or accident." The military judge further instructed that knowledge may be inferred from circumstantial evidence. The military judge also properly instructed that "[a]ny facts or circumstances that show that a visual depiction of child pornography was unintentionally or inadvertently acquired are relevant to wrongfulness."

Evidence of Appellant's sexual interest in children and visits made to child pornography chatrooms close in time to when the charged image was downloaded made the fact that Appellant knowingly and wrongfully possessed child pornography more probable and Appellant's mistake or accident less probable. The five images recovered from Appellant's cell phone similarly rebut Appellant's mistake-of-fact defense because they allow an inference that Appellant was sexually aroused by children and made it more likely Appellant knowingly and wrongfully possessed the charged image that was found on his laptop. Thus, we conclude that the military judge's application of the second *Reynolds* prong was not clearly unreasonable.

Applying the third *Reynolds* prong, the military judge found the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to Appellant under Mil. R. Evid. 403. The military judge provided a tailored limiting instruction on the use of the evidence. We agree with this determination and the use of the limiting instruction.

We conclude that the military judge properly applied the *Reynolds* test and his ruling was not a clear abuse of discretion. Accordingly, we hold that the military judge did not err in admitting the evidence.

## C. Legal and Factual Sufficiency

Appellant challenges the legal and factual sufficiency of the evidence supporting his conviction. He alleges the Government did not prove Appellant knew he possessed the charged image that was found on his laptop computer. Furthermore, Appellant relies on statements he made to SrA BH that he tried several times to delete images of children that she found on his computer. We are not persuaded and find his conviction both legally and factually sufficient.

### 1. Additional Facts

The DCFL examiner testified he found the charged image within the allocated space of Appellant's password-protected laptop. This folder was the default location where files that a user copied from an Internet website were saved. The examiner further explained that the charged image appeared in a database of known child pornography images, which caused him to have no reason to believe it was a computer-generated image. A pediatrician testified the charged image depicted a prepubescent child.

### 2. Law

In order for the members to find Appellant guilty as charged in this case, the Government was required to prove beyond a reasonable doubt: (1) that Appellant knowingly and wrongfully possessed child pornography, to wit: a digital image of a minor engaging in sexually explicit conduct; and (2) that under the circumstances, the conduct of Appellant was of a nature to bring discredit upon the armed forces. *See* 2016 *MCM,* pt. IV, ¶ 68b.b.(1). "[C]hild pornography" is defined as "material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *Id.* at ¶ 68b.c.(1). "Sexually explicit conduct" includes "lascivious exhibition of the genitals or pubic area of any person." *Id.* at ¶ 68b.c.(7)(e). "Possessing" means, *inter alia,* "exercising control of something;" the possession "must be knowing and conscious," and "may be direct physical custody like holding an item in one's hand, or it may be constructive, as in the case of a person who

24

hides something in a locker or a car to which that person may return to retrieve it." *Id*. at ¶ 68b.c.(5).

We review issues of legal and factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are ourselves] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

### 3. Analysis

The presence of an image of child pornography on Appellant's password-protected laptop computer was compelling evidence that Appellant committed the charged offense. The charged image showed a naked child either engaged in or simulating masturbation. Even without the benefit of expert testimony a rational factfinder could conclude Appellant knowingly and wrongfully possessed a picture that depicted an actual minor engaged in sexually explicit conduct. Appellant's first sergeant offered testimony that Appellant's possession of child pornography was of a nature to bring discredit upon the armed forces.

Proof that Appellant was the individual who possessed the charged image was shown by evidence that his laptop was protected with a unique password

he provided to SrA BH. A reasonable factfinder could conclude that none other than Appellant used the laptop. Appellant admitted to possessing the image when he acknowledged, "I think I know what you're talking about" after SrA BH confronted him about finding "pictures of the little kids" on his laptop that were "just so explicit." His reply to her that he thought he had "deleted all that" could be relied on to prove possession even if the comment was intended to be exonerating. Accordingly, a reasonable factfinder could conclude that Appellant exercised control over the charged image from the moment it was downloaded until he gave his laptop to SrA BH to repair.

Proof that Appellant knowingly and consciously possessed the charged image was shown by evidence that three images of children, including the charged image, were downloaded from a chatroom in the span of 45 minutes and were the only images in Appellant's downloads folder. The DCFL examiner testified Appellant would have either viewed or downloaded the image by selecting a hyperlink. Appellant argues the image would have been found in his cache or unallocated space if he viewed it. However, the absence of the charged image in these locations is not dispositive because the DCFL examiner also testified that a user can easily clear his Internet cache and the laptop could have overwritten the charged image from unallocated space. On these facts a factfinder could conclude there was no reasonable possibility Appellant possessed the charged image without having seen the image.

Finally, the evidence negates Appellant's claim that he accidentally downloaded the charged image while searching for adult pornography. No images of adult pornography were among the three images of children found in Appellant's downloads folder. Coupled with other evidence in the case, including that Appellant visited multiple Internet chatrooms titled with child pornography nomenclature during a 1 hour and 40 minute period, the circumstances surrounding how Appellant came into possession of the charged image could have led a reasonable factfinder to the conclusion that Appellant was aware of the charged image and its contraband nature, and his possession was deliberate and not accidental.

Furthermore, evidence admitted under Mil. R. Evid. 404(b), including four pictures of Appellant holding his erect penis in front of a computer screen displaying images of children that were found on his cell phone, established Appellant's motive, intent, and absence of mistake in possessing the charged image. Similarly, a fifth picture also found on the cell phone showed a female child with an adult hand holding her buttocks open and exposing her genitalia and was evidence of both Appellant's sexual interest in children and further proof Appellant did not possess the charged image accidentally or by mistake.

26

Accordingly, viewing the evidence in a light most favorable to the Prosecution, we conclude that a rational factfinder could have found Appellant guilty beyond a reasonable doubt of all the elements of possession of child pornography and the evidence is legally sufficient to support Appellant's conviction. Having weighed the evidence in the record and made allowances for not having personally observed the witnesses, we also conclude the evidence is factually sufficient and are convinced of Appellant's guilt beyond a reasonable doubt. Therefore, we find Appellant's conviction both legally and factually sufficient.

### D. Post-Trial Processing

Appellant claims he was prejudiced by errors in the post-trial processing of his case. Appellant's assignment of error has two parts. First, Appellant avers he was prejudiced by the convening authority's erroneous denial of his request to defer the adjudged reduction in grade and failure to explain the reason for denial. Appellant claims prejudice because his wife received less financial support while he was incarcerated than he would have received if the deferment had been granted. Second, Appellant argues he was prejudiced by an impermissible statement made by the staff judge advocate (SJA) in the SJAR that the primary evidence against Appellant included, *inter alia,* the "Report of Investigation"—a preliminary hearing exhibit that was not admitted at trial. We are not persuaded.

### 1. Additional Background

Five days after Appellant's court-martial ended, the trial defense counsel made a written request of the convening authority to defer and waive[21] automatic forfeiture of Appellant's pay and allowances, and defer Appellant's reduction in grade, in accordance with Articles 57(a) and 58b, UCMJ, 10 U.S.C. §§ 857(a), 858b, and R.C.M. 1101(c) and (d). Trial defense counsel argued that granting the request "will be in the best interests of the community by ensuring that [Appellant's] wife . . . who has done nothing wrong, can survive in the aftermath of this case." Fourteen days later, on 21 December 2017, the convening authority waived automatic forfeitures for the benefit of Appellant's wife for a period of six months or release from confinement,

---

[21] Because of Appellant's sentence, the convening authority had the authority to defer until action the automatic forfeitures of pay and allowances that would otherwise become effective, Article 57(a)(2), UCMJ, or waive the forfeitures for the benefit of Appellant's dependents. Article 58b(b), UCMJ.

whichever was sooner, and made the waiver retroactive to 16 December 2017.[22]

Although the convening authority granted Appellant's spouse relief from automatic forfeitures, he denied Appellant's request to defer the adjudged reduction in grade. He did not articulate any reason for the denial and directed questions concerning his decision to the USAFA legal office. Both the deferral request and the convening authority's denial were included as attachments to the SJAR to the convening authority on 31 January 2018, which the legal office served on Appellant and the trial defense counsel. The SJAR advised the convening authority to continue the waiver of forfeitures and approve the sentence as adjudged. In clemency, neither Appellant nor the trial defense counsel on Appellant's behalf challenged the convening authority's denial of the deferral request or failure to provide the reason for the denial, or asked the convening authority to disapprove the portion of the sentence that included a reduction in grade.

The SJAR also advised the convening authority that in the opinion of the SJA the evidence upon which the conviction was based was legally sufficient, and informed, "[t]he primary evidence against the accused consisted of the *Report of Investigation* (ROI), pornographic digital images, and a pretext conversation with a witness." (Emphasis added). Both the AFOSI ROI and the DCFL laboratory reports were properly included in the record of trial, *see* R.C.M. 1103(b)(3)(A)(i) and (B), along with the SJAR served on Appellant prior to submission of matters in clemency. The laboratory report was also included in the AFOSI ROI. However, the SJAR did not further specify if the "ROI" he referred to in the SJAR meant the redacted excerpts of the AFOSI ROI that was not part of the Government's proof at trial; or, alternatively, if it was in reference to portions of a DCFL laboratory report that was produced from the forensic examination of Appellant's digital media, which was admitted as two 23-page exhibits, Prosecution Exhibits 6 and 7.

In clemency, Appellant challenged the finding of guilty, and claimed the evidence to sustain his conviction was insufficient. Appellant did not respond to the SJAR's reference to the ROI, which the SJA identified was part of the primary evidence used against Appellant at trial. The addendum to the SJAR properly informed the convening authority he may consider the record of trial

---

[22] Absent action by the convening authority, the automatic forfeitures and reduction in grade would take effect 16 December 2017, which was 14 days after the sentence was adjudged. *See* Article 57(a)(1)(A), UCMJ.

before taking action.[23] On 1 March 2018, the convening authority approved the adjudged sentence and continued the waiver of automatic forfeiture of Appellant's pay and allowances he had previously granted and made retroactive to 16 December 2017.

**2. Law**

A convening authority "may, upon written application of the accused . . . defer the accused's service of a sentence to confinement, forfeitures, or reduction in grade that has not been ordered executed." R.C.M. 1101(c)(2). "The accused shall have the burden of showing that the interests of the accused and the community in deferral outweigh the community's interest in imposition of the punishment on its effective date." R.C.M. 1101(c)(3). When evaluating requests for deferment, a convening authority may consider the following factors:

> [T]he probability of the accused's flight; the probability of the ac-cused's commission of other offenses, intimidation of witnesses, or interference with the administration of justice; the nature of the offenses (including the effect on the victim) of which the accused was convicted; the sentence adjudged; the command's immediate need for the accused; the effect of deferment on good order and discipline in the command; the accused's character, mental condition, family situation, and service record.

R.C.M. 1101(c)(3).

We review the convening authority's action on a deferment request for an abuse of discretion. R.C.M. 1101(c)(3). "When a convening authority acts on an accused's request for deferment of all or part of an adjudged sentence, the action must be in writing . . . and must include the reasons upon which the action is based." *United States v. Sloan*, 35 M.J. 4, 7 (C.M.A. 1992) (footnote omitted), *overruled on other grounds, United States v. Dinger*, 77 M.J. 447 (C.A.A.F. 2018); *see also* R.C.M. 1101(c)(3), Discussion ("If the request for deferment is denied, the basis for the denial should be in writing and attached to the record of trial.").

The proper completion of post-trial processing is a question of law the court reviews de novo. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000) (citing *United States v. Powell*, 49 M.J. 460, 462 (C.A.A.F. 1998)). Failure to comment in a timely manner on matters in the SJAR or matters attached to

---

[23] *Accord*, R.C.M. 1107(b)(3)(A).

the SJAR "waives in the absence of plain error, or forfeits, any later claim of error." *United States v. Zegarrundo*, 77 M.J. 612, 614 (A.F. Ct. Crim. App. 2018)(citing R.C.M. 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005)). Analyzing for plain error, we assess whether "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Scalo*, 60 M.J. at 436 (quoting *Kho*, 54 M.J. at 65). "To meet this burden in the context of a post-trial recommendation error . . . an appellant must make 'some colorable showing of possible prejudice.'" *Id.* at 436–37 (quoting *Kho*, 54 M.J. at 65). "The threshold is low, but there must be some colorable showing of possible prejudice . . . in terms of how the [error] potentially affected an appellant's opportunity for clemency." *Id.* at 437 (citation omitted).

### 3. Analysis

#### a. Denial of Deferment of Reduction in Grade

The convening authority failed to identify any reason in the 21 December 2017 written denial of the deferral of Appellant's reduction in grade. This was error. However, even if under a plain error analysis the omission was obvious, we conclude it does not entitle Appellant to relief because there was no colorable showing of possible prejudice. *See United States v. Eppes*, No. ACM 38881, 2017 CCA LEXIS 152, at *43 (A.F. Ct. Crim. App. 21 Feb. 2017) (unpub. op.) (citing Article 59(a), UCMJ, 10 U.S.C. § 859(a)). "[A]bsent credible evidence that a convening authority denied a request to defer punishment for an unlawful or improper reason, an erroneous omission of reasons in a convening authority's denial of a deferment request does not entitle an appellant to relief." *Id.* at *43 (citing *United States v. Zimmer*, 56 M.J. 869, 874 (A. Ct. Crim. App. 2002)).

The convening authority made significant provisions for Appellant's spouse by waiving mandatory forfeitures for the maximum allowable period. This suggests his decision to deny Appellant's deferment in rank was not arbitrary, fanciful, or clearly unreasonable. We consider this inference along with the absence of any evidence that the denial was erroneous or for an unlawful or improper reason, or that Appellant was materially prejudiced by the omitted explanation. While appellate defense counsel avers that Appellant's wife received "severely reduced financial support at the time she needed it most," without the necessary showing of prejudice we find the failure to provide an explanation does not warrant relief. *See United States v. Jalos*, No. ACM 39138, 2017 CCA LEXIS 607, at *5–6 (A.F. Ct. Crim. App. 5 Sep. 2017) (unpub. op.) ("Even when there is error in the convening authority's action on a deferment request, relief is only warranted if an appellant makes a colorable showing of possible prejudice.").

### b. Report of Investigation

Appellant argues prejudice from the SJAR's reference to an ROI that was among the primary items of evidence admitted against Appellant at trial. Appellant claims plain error that materially prejudiced a substantial right because the reference improperly directed the convening authority to examine a preliminary hearing exhibit. We are not persuaded.

It was clearly erroneous for the SJA to suggest to the convening authority that an entire ROI was introduced as evidence at trial. However, we find Appellant suffered no colorable showing of possible prejudice. *Scalo*, 60 M.J. at 436. The immediate concern with the statement in the SJAR is not the contents of the ROI, but how the convening authority could have interpreted it. Had the convening authority examined the trial exhibits and looked for an ROI he would have found two 23-page DCFL laboratory reports produced from the forensic examination of Appellant's digital media admitted as Prosecution Exhibits 6 and 7. Both exhibits are found in Volume 6 of the record along with other evidence that was admitted at trial.

On the other hand, if the convening authority did review the AFOSI report that was included in the preliminary hearing portion of the record of trial, it would be obvious from its markings ("PHO Exhibit 2") and location in the record (Volume 2) that it was not admitted at trial. The SJAR did not recite the contents of the ROI, describe it in any detail, or direct the convening authority to review a specific report. Even if the SJA incorrectly stated what evidence supported the finding, the convening authority did not have the authority to dismiss the charge and specification by modifying or setting aside the findings. Article 60(c)(3), UCMJ, 10 U.S.C. § 860(c)(3).[24] Therefore, the inability of the convening authority to impact the findings effectively renders harmless any ambiguity about what evidence did or did not support the findings. Accordingly, although the SJAR referenced an ROI as among the primary items of evidence used to convict, Appellant has not made a colorable showing of possible prejudice warranting remand for new post-trial processing.

---

[24] The National Defense Authorization Act for Fiscal Year 2014 changed Article 60, UCMJ, and substantially modified the convening authority's ability, *inter alia,* to disapprove a finding of guilty. *See* Pub. L. No. 113–66, § 1702, 127 Stat. 672, 954–58 (2013).

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c) (2016). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court